**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

In re:

| | |
|---|---|
| Pure Prairie Poultry, Inc. | Case No. 24-32426 KAC |
| Debtor. | Chapter 11 Case |

---

**NOTICE OF HEARING AND MOTION FOR AN EXPEDITED HEARING AND FOR AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, PAYROLL TAXES, AND EMPLOYEE BENEFITS; AND (II) AUTHORIZING PAYROLL PROVIDER AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

---

TO: THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3.

1. The above-named Debtor ("Debtor"), through its undersigned attorneys, moves the court for the relief requested below and gives notice of hearing.

2. The Court will hold a hearing on this motion at 3:00 p.m. on Wednesday, September 25, 2024 before the Honorable Katherine A. Constantine, Courtroom 8, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3. Due to the request for expedited hearing, the Debtor will not object to the timeliness of any response that is filed and delivered to Debtor's counsel at least two (2) hours prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4. This court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. The petition commencing this case was filed on September 17, 2024 (the "Petition Date"). The case is now pending before this court.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before

1

134883855v3

this court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This motion requests relief under 11 U.S.C. §§ 105(a), 363, 549, 1107 and 1108, and is filed pursuant to Local Rules 9013-1 through 9013-3. The Debtor seeks an order authorizing the Debtor to pay pre-petition wages and related employee benefits and payroll taxes.

7. The Debtor operates a poultry production plant in Charles City, Iowa (the "Plant"). As of the Petition Date, its poultry products are sold in regional grocery stores and food markets in Minnesota, Iowa, North Dakota, South Dakota, Missouri, and Nebraska. As of the Petition Date, the Debtor presently had approximately 138 employees.

8. The events precipitating the Debtor's chapter 11 filing are described in the Declaration of George Peichel, Chief Financial Officer of the Debtor, filed on September 16, 2024.

9. On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's Chapter 11 case. No creditors or other official committee has been appointed pursuant to Section 1102 of the Bankruptcy Code.

10. As of the Petition Date, the Debtor owed employees for unpaid gross wages, commissions, benefits, salaries, payroll taxes (including, but not limited to, employer matching), reimbursements, and 401(k) contributions (collectively, "Pre-Petition Wages"). Of this amount, the Debtor will owe approximately $112,000 for payroll taxes. The Debtor's payroll is pre-funded. The payroll periods are every two weeks and conclude on the Saturday immediately preceding the payday. The payroll is made through direct deposit. The last payroll was paid on

134883855v3

September 6, 2024 in the amount of approximately $347,000 in gross wages.

11.  The Debtor will only pay Pre-Petition Wages to or on behalf of any individual employee up to the $15,150.00 limit set forth in § 507(a)(4) of the Bankruptcy Code.

12.  In addition to wages, the Debtor offers its employees various forms of compensation, including wages and salaries, as well as other benefits as described below, all of which are included in the definition of Pre-Petition Wages:

    i.    <u>Wages and Salaries</u>.  The Debtor employs approximately 138 people in its operations.  Wage and salary payments are paid on a bi-weekly basis.  Employees were most recently paid on September 6, 2024, and the first post-petition payroll will be on September 20, 2024.

    ii.    <u>Payroll Process</u>.  The Debtor uses ADP for the purposes of administration and distribution of payroll ("Payroll Provider").  The Debtor provides wage and hour information to the Payroll Provider on a bi-weekly basis for calculation of net wages, taxes, and other withholdings.  The Payroll Provider processes each payroll, then disburses amounts pre-paid by Debtor on the Thursday prior to disbursement.  Maintaining a functioning payroll process is imperative to the Debtor's operations.  The Debtor pays the Payroll Provider approximately $2,000 per month for its services.  The Debtor is current on such payments. Some amounts included in the next invoice will be on account of pre-petition services. To ensure continued service on this critical process, and timely payment of payroll, the Debtor seeks authorization to pay any pre-petition amounts owed to the Payroll Provider.

    iii.    <u>Taxes, Withholdings, and Employee Funds</u>.  In the ordinary course of business, the Debtor (or the Payroll Provider) withholds amounts from employee paychecks

    necessary to satisfy third-party requirements, including taxes, Social Security and Medicare; employee contributions toward benefit plans and other benefits; and other deduction programs, including garnishment and child support or other similar orders. The Debtor's position is that such funds are not property of the bankruptcy estate, but are rather property of the Debtor's employees. Out of an abundance of caution, the Debtor requests authorization to pay over to the appropriate third-party recipients of such funds (whether through the Debtor or the Payroll Provider) deducted on account of pre-petition obligations to employees, and to continue such practice in the ordinary course of business post-petition.

 iv. <u>Insurance Plans and Related Programs</u>. The Debtor has established plans and policies to provide employees with health benefits, including medical, dental, and vision insurance, and other insurance benefits, including disability and life insurance, as well as flexible spending and health savings account plans. Employees pay a part of the cost of the medical plan through payroll deductions, and the Debtor covers the remaining share on a bi-weekly basis. It is difficult to determine the extent of the Debtor's pre-petition obligations under the insurance and related programs, but it estimates that the monthly cost to the Debtor under the insurance plans and related programs for September to be approximately $162,700, and any future amounts will be subject to approval of the Debtor in Possession budget on a final basis.

 v. <u>COBRA Coverage</u>. As of the Petition Date, some former employees have elected COBRA coverage under various benefit plans. These former employees contribute 100% of the cost of coverage, but the Debtor requests authority to continue to offer

4

        this coverage without interruption until they discontinue coverage in accordance with applicable law, including any mandatory notice provisions.

    vi.    <u>401(k) Plan</u>. The Debtor offers 401(k) plans to eligible employees on the first of the month following one year of service. The Debtor offers a match contribution, which costs the Debtor approximately $9,000 per pay period. The Debtor had matching obligations owing as of the Petition Date. The Debtor seeks authority, but not the obligation, to pay the pre-petition unpaid match amount, and to otherwise continue the 401(k) program in the ordinary course of business.

    vii.    <u>Employee Reimbursement</u>. The Debtor reimburses employee expenses relating to travel and related items when employees are working away from their normal location. Such amounts are reimbursed through payroll. Debtor is unable to calculate the amount of any possible pre-petition reimbursements.

    viii.    <u>Paid Time Off ("PTO")</u>. The Debtor's employment policies provide that full time nonexempt hourly employees accrue a certain number of hours of PTO each pay period depending on various factors including time in service and the number of hours worked during that time period. With prior approval as dictated by the Debtor's employment policies, employees may use PTO to take paid days off.

    13.    The Debtor will suffer irreversible and irreparable harm if it is not authorized to pay Pre-Petition Wages and related benefits and to honor employment policies, including the PTO policy. If the wages are not paid, the Debtor's employees will suffer personal hardship, and in many cases, will be unable to pay their basic living expenses. Such a result would destroy employee morale and result in significant employee turnover, causing immediate damage to the Debtor's ongoing business operations.

134883855v3

14. Debtor most recently paid employees on September 6, 2024. Thus, all pay dates are current through the Petition Date, though Employees are currently scheduled to be paid again on September 20, 2024. However, because payroll concludes on the Saturday immediately before the relevant pay day, employees have only been paid for services performed through August 31, 2024. Thus, all pay towards services performed between September 1 and the Petition Date constitute pre-petition obligations of the Debtor.

15. Bankruptcy Courts in the District of Minnesota regularly authorize debtors to pay Pre-Petition Wages so long as the amount to be paid does not exceed the maximum amount afforded priority under 11 U.S.C. § 507(a)(4). Cause exists to hear this matter on an expedited basis to avoid delay in ongoing payment. To avoid substantial disruption of the Debtor's business, the Debtor should be authorized to pay pre-petition wages.

16. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

17. Pursuant to Local Rule 9013-2(a), this Motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

18. Pursuant to Local Rule 9013-2(c), the Debtor gives notice that it may, if necessary, call George Peichel, Chief Financial Officer of Debtor, to testify on behalf of the Debtor about the factual matters raised in this Motion.

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion and authorize the payment of Pre-Petition Wages, employee benefits, and payroll taxes and for such other and further relief as the court may deem just and equitable.

134883855v3

| | |
|---|---|
| Dated: September 20, 2024 | **TAFT STETTINIUS & HOLLISTER LLP**<br><br>By: */s/ James M. Jorissen*<br>James M. Jorissen, #262833<br>Adam G. Chandler, #397408<br>Schaan P. Barth, #397898<br>2200 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402<br>Telephone: 612-977-8400<br>Facsimile: 612-977-8650<br>jorissen@taftlaw.com<br>achandler@taftlaw.com<br>sbarth@taftlaw.com<br><br>**PROPOSED COUNSEL FOR THE DEBTOR** |

134883855v3

## VERIFICATION

I, George Peichel, Chief Financial Officer of the Debtor named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated this 20th day of September, 2024.

_____
George Peichel

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

___

In re:

Pure Prairie Poultry, Inc.                           Case No. 24-32426 KAC

            Debtor.                                Chapter 11 Case

___

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, PAYROLL TAXES, AND EMPLOYEE BENEFITS; AND (II) AUTHORIZING PAYROLL PROVIDER AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

___

The above-named Debtor (the "Debtor"), by and through its undersigned counsel, submits this memorandum of law in support of the accompanying motion in the above-entitled matter and in accordance with Local Rule 9013-2(a).

**FACTUAL BACKGROUND**

The Debtor relies on the statement of facts set forth in the verified motion, the Petition, and the Declaration of George Peichel in Support of First Day Motions. Defined terms used in this Memorandum have the same meaning as in the accompanying motion.

**ARGUMENT**

**I.    THE DEBTOR'S REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.**

The Debtor requests expedited relief. Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a Motion "for cause shown." Cause exists here to grant the Motion on an expedited basis. As described in the motion, the Debtor's employees will suffer hardship and there will likely be substantial attrition in the workforce if employees are not timely paid and assured that the Debtor will honor certain workplace benefits, including prepetition accrued PTO.

9

Indeed, some employees probably live paycheck to paycheck. Without employees, the Debtor will be unable to continue business operations and will be forced to liquidate. Liquidation following cessation of operations would strip the Debtor of its going-concern value, the loss of which – given the composition of assets in this Chapter 11 estate – would be inimical to the interests of the bankruptcy estate, its creditors and other stakeholders. Expedited relief authorizing payment of employees is thus necessary to avoid immediate and irreparable harm.

## II.  THE DEBTOR SHOULD BE AUTHORIZED TO PAY PRE-PETITION WAGES AND RELATED BENEFITS.

Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, any claims by the Debtor's employees based on "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded priority status to the extent of $15,150 per employee. 11 U.S.C. §§ 507(a)(4) and 507(a)(5). Accordingly, such amounts would normally be paid in full under a plan of reorganization.  Thus, the primary issue raised by this Motion is the *timing* of such payments.  In an effort to (i) ensure that its operations continue, and (ii) maximize going-concern value of its business, the Debtor in essence seeks to fund pre-petition obligations owed to its employees - to the extent permitted by Section 507 - at the outset of this case rather than at the end of the case.

### A.  *The Bankruptcy Code Allows for Payment of Certain Pre-Petition Claims*

The Bankruptcy Code does not prohibit a debtor from paying pre-petition claims in all instances. Indeed, the Code authorizes debtors to do so in several circumstances with court approval. *See, e.g.,* 11 U.S.C. §§ 363(b), 503(b)(9), 549 (2012). Courts routinely permit debtors to fund pre-petition wage and benefits claims. *See* 4 COLLIER ON BANKRUPTCY ¶ 507.06[1]

10

at 507-31 (Rev. 16th ed. 2012) ("The ability to ensure that the employees receive their unpaid prepetition salary and do not miss a paycheck is critical to obtaining the stability necessary for the transition to operating as a debtor in possession."). Across jurisdictions, however, courts have relied on a range of rationales in granting motions seeking authority to pay pre-petition wages and benefits.

For example, courts in several jurisdictions have held that pre-petition wages and benefits can be paid pursuant to Section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code allows a debtor, with authorization, to pay claims outside the ordinary course of business. While most businesses consider the payment of wages, salaries, and benefits to be ordinary course expenditures, some courts hold that when such obligations accrue during the pre-petition period, funding such obligations does not fall within the ordinary course. *See, e.g., In re K-Mart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

Courts also authorize the funding of pre-petition wages and benefits pursuant to Section 105(a) or Section 549 of the Bankruptcy Code based on the "Doctrine of Necessity." The Doctrine of Necessity acknowledges that, in certain circumstances, it is in the best interest of the estate to pay pre-petition creditors to induce them to continue working for or doing business with the debtor. *Miltenberger v. Logansport,* 106 U.S. 286 (1882). Although devised long ago, the Doctrine of Necessity has survived several amendments to the Bankruptcy Code, and it is still cited today. *See, e.g., In re O & S Trucking, Inc.,* Case No. 12-61003, 2012 WL 2803738, at *2 (Bankr. W.D. Mo. June 29, 2012); *In re Payless Cashways, Inc.,* 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re Just For Feet,* 242 B.R. 821 (D. Del. 1999); *Ionosphere Clubs,* 98 B.R. at 175.

11

In the context of large corporate chapter 11 filings, including in this district, courts have approved payment of employee prepetition claims for compensation, benefits and expense reimbursements. *See, e.g., In re Granite City Food & Brewery, Ltd.*, No. 19-43756 (Bankr. D. Minn. Dec. 19, 2019); *In re Archdiocese of Saint Paul and Minneapolis,* No. 15-30125 (RJK) (Bankr. D. Minn. Jan. 20, 2015) [ECF No. 47]; *In re SCICOM Data Servs., Ltd.,* No. 13- 43894 (MER) (Bankr. D. Minn. Aug. 20, 2013) [ECF No. 19]; *In re Wagstaff Minn. Inc.,* No. 11- 43073 (KAC) (Bankr. D. Minn. May 5, 2011) [ECF No. 33]; *In re Duke & King Acquisition Corp.,* No. 10-38652 (GFK) (Bankr. D. Minn. Dec.8, 2010) [ECF No. 37]; *In re Schwing Am., Inc.,* No. 09-36760 (NCD) (Bankr. D. Minn. Oct. 2, 2009) [ECF No. 17]; *In re Genmar Holdings, Inc.,* No. 09-43537 (KAC) (Bankr. D. Minn. June 4, 2009) [ECF No. 25]; *In re Polaroid Corp.,* No. 08-46617 (GFK) (Bankr. D. Minn. Dec. 23, 2008) [ECF No. 22].

### B.   *Regardless of the Rationale, the Payments at Issue Should Be Authorized*

The Court should authorize the Debtor to make the payments at issue in the Motion "outside the ordinary course" pursuant to Section 363. Funding the pre-petition claims of employees, like any other use of property outside the ordinary course of business, is appropriate in instances where the debtor can demonstrate a "business justification" for doing so.

> Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

*In re Ionosphere Clubs, Inc.,* 98 B.R. at 175 (citations omitted); *see also Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.),* 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (court allowed debtor to continue payment of pre-petition wages and other benefits because it was consistent with debtor's "imperatives").

12

The Debtor has a significant and obvious business justification for the relief requested in the Motion. Funding pre-petition wages and benefits will stabilize the Debtor's operations and maximize the going-concern value of the Debtor's business. Conversely, the Debtor does not fund its pre-petition obligations to employees, there is a significant risk that the Debtor will have to discontinue operations and be forced to liquidate. Inability to continue generating revenue as a going concern would negatively impact all parties in interest.

In addition, and in the alternative, the Motion should be granted pursuant to the Doctrine of Necessity in the event that the Court analyzes the Motion under Section 105(a) or Section 549. Section 105(a) grants the Court authority to issue any order "necessary or appropriate to carry out the provisions" of the Code. Section 105(a) provides a basis upon which this Court may authorize the debtor to pay accrued pre-petition wages, salaries, and benefits. *See In re Ionosphere Clubs, Inc.,* 98 B.R. at 175; *In re Quality Interiors, Inc.,* 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991). Bankruptcy Code Section 549(a)(2)(b) also recognizes that a court may authorize the payment of pre-petition debts. *In re Payless Cashways, Inc.,* 268 B.R. at 546; *Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.),* 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984). In fact, the same justifications for payment of employee obligations support payment of independent representative commissions.

The above analysis holds true even when scrutinized applying the Seventh Circuit's analysis in *In re K-Mart Corp.,* 359 F.3d 866 (7th Cir. 2004). In the *K-Mart* case, the Seventh Circuit considered whether the bankruptcy court could authorize payments to fund pre-petition claims of "critical vendors." Ultimately the Seventh Circuit determined that the bankruptcy court failed to establish its authority to do so. The Seventh Circuit acknowledged, however, that Section 363(b) might provide a basis for authorizing such payments under the right circumstances. *In re*

*K-Mart Corp.,* 359 F.3d at 872. To that end, the Court noted that, to justify the payment of pre-petition claims, the debtor must show that (i) it will suffer damage if such payments are not made, and (ii) that other creditors will not suffer harm as a result of the proposed payments. *Id.* The Debtor has made such a showing in this case.

Moreover, the interests of the estate and its creditors are different with respect to employees than they are with respect to "critical vendors."

> A central purpose of chapter 11 is to realize on a debtor's going concern value. That going-concern value is dependent in part upon the continuity and performance of the debtor's work force—something particularly true in the case at bar. The continuity and performance of a debtor's work force is, in turn, typically dependent on timely payment of wages and benefits. As claims based on prepetition wages and benefit programs almost always—as is true of the Prepetition Employee Obligations—are entitled to priority payment under section 507(a) of the Code, unsecured creditors are not disadvantaged by early—timely—satisfaction of those claims.

*In re Tusa-Expo Holdings, Inc.,* Case No. 08–45057, 2008 WL 4857954, at *4 (Bankr. N.D. Tex. Nov. 7, 2008). Like the debtor in *Tusa-Expo Holdings,* the Debtor's financial future here is dependent on the continued support and retention of its employees. Accordingly, the Debtor respectfully requests that the Court grant its Motion on an expedited basis, and that the Debtor be authorized to pay Pre-Petition Wage obligations to its employees.

Employees are critical to the Debtor and its ability to sustain business operations without interruption and maximize the value of its assets. If payment of wages and benefits is postponed until plan confirmation, employee turnover and severe business disruption will jeopardize any going concern value. To the extent the Debtor's operations suffer, creditors also suffer and estate assets diminish. It is in the best interest of creditors and all parties in interest that wages and benefits be paid to employees to maintain their good will. The issue is really one of timing of payment, and creditors are not harmed.

134883855v3

## **CONCLUSION**

The Debtor has a compelling business justification for funding pre-petition obligations owed to its employees. Funding such obligations is necessary to avoid immediate and irreparable harm. Further, granting the relief requested will not prejudice any creditor or other party in interest. Rather, the relief requested will inure to the benefit of all parties in interest by ensuring that Debtor's business operations continue. The Debtor respectfully requests that the Court grant the relief requested in the Motion on an expedited basis.

Dated: September 20, 2024  **TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ James M. Jorissen*
James M. Jorissen, #262833
Adam G. Chandler, #397408
Schaan P. Barth, #397898
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-977-8400
Facsimile: 612-977-8650
jorissen@taftlaw.com
achandler@taftlaw.com
sbarth@taftlaw.com

**PROPOSED COUNSEL FOR THE DEBTOR**

134883855v3

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.                                   Case No. 24-32426 KAC

        Debtor.                                              Chapter 11 Case

**ORDER**

This case is before the court on Debtor's Motion for Expedited Relief and an Order (I) Authorizing Debtor to pay Pre-Petition Wages, Payroll Taxes, and Employee Benefits; and (II) Authorizing Payroll Provider and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief (the "Motion"). Based on the Motion and this court having determined that it is in the best interests of Debtor's estate to grant the Motion, and it appearing that due and proper notice of this action was given,

**IT IS HEREBY ORDERED:**

1. The Debtor's Motion is granted.

2. The Debtor's request for expedited relief is granted.

3. The Debtor is authorized, but not required, to pay or cause to be paid, in their sole discretion, all amounts required under or related to outstanding prepetition wages (including expenses) earned within 180 days before the petition date, up to a maximum of $15,150.00 per employee, and to honor, but not cash out, paid time off accrued by their employees pursuant to 11 U.S.C. § 507(a).

4. The Debtor is authorized, but not required, to continue to pay and honor, in its sole discretion, obligations arising under or related to its employment plans, practices, programs and policies for its employees as set forth in the Motion including, without limitation, those giving rise to the Pre-Petition Wages, as such employment plans, practices, programs and policies were in effect as of the Petition Date.

134883855v3

5. The Debtor is authorized to pay, in its sole discretion, pre-petition amounts owing in the ordinary course of business to third parties in connection with administering and maintaining its employee benefit programs, including the Payroll Provider.

6. The Debtor's Payroll Provider, and all applicable banks and other financial institutions, are authorized to receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtor under this Order whether presented prior to or after the Petition Date to the extent necessary and to the extent the Debtor has good funds standing to its credit with such bank or other financial institution. The Payroll Provider and such banks and financial institutions are authorized to rely on the representations of the Debtor as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquire and without liability for following the Debtor's instructions.

7. Nothing in the Motion or this Order, nor any payments made pursuant to this Order, shall be deemed to be, or constitute, (a) an admission as to the validity or priority of any claim against the Debtor, (b) an assumption or post-petition reaffirmation of any agreement, plan, practice, program, policy, executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, (c) a grant of third-party beneficiary status of any additional rights on any third party, or (d) a waiver of any rights, claims or defenses of the Debtor.

8. Nothing in the Motion or this Order shall impair the ability of the Debtor to contest the validity or amount of any payment made pursuant to this Order.

9. Nothing in the Motion or this Order shall be construed as impairing the Debtor's right to contest the validity or amount of any Pre-Petition Wages, including payroll taxes that may be due to any taxing authority.

10. Notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____

United States Bankruptcy Judge

134883855v3