**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

_____

In re:

Pure Prairie Poultry, Inc.,                                    Case No. 24-32426 KAC

          Debtor.                                            Chapter 11 Case

_____

**NOTICE OF HEARING AND MOTION FOR AN ORDER (I) GRANTING EXPEDITED HEARING; (II) AUTHORIZING MAINTENANCE OF DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM; (III) AUTHORIZING THE CONTINUED USE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND THE PAYMENT OF RELATED BANK FEES; AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

_____

TO:     THE PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3.

      1.      The above-named Debtor ("Debtor"), through its undersigned attorneys, move the court for the relief requested below and gives notice of hearing.

      2.      The Court will hold a hearing on this motion at 3:00 p.m. on Wednesday, September 25, 2024 before the Honorable Katherine A. Constantine, Courtroom 8, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

      3.      Due to the request for expedited hearing, Debtor will not object to the timeliness of any response that is filed and delivered to Debtor's counsel at least two (2) hours prior to the hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

      4.      This court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. On September 20, 2024 (the "Petition Date"), Debtor filed a voluntary petition under chapter 11. This case is currently pending before this court.

      5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before

this court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This motion requests relief under 11 U.S.C. §§ 105(a), 363(c)(1), and 503(b) and

Federal Rules of Bankruptcy Procedure 6003 and 6004. This motion is filed pursuant to Federal

Rule of Bankruptcy Procedure 9013 and Local Rules 9013-1 through 9013-3.

## FACTUAL BACKGROUND

7.      Debtor owns and operates poultry processing facilities in Iowa.

8.      Additional information about Debtor's business and the events leading up to the

Petition Date can be found in the Declaration of George Peichel in Support of Chapter 11 Petitions

and First Day Motions, filed on September 20, 2024.

9.      On the Petition Date, Debtor filed a voluntary petition for relief pursuant to

Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues

to operate its businesses as a debtor in possession pursuant to Bankruptcy Code Sections 1107(a)

and 1108. No trustee or examiner has been appointed in the Debtor's Chapter 11 case. No

creditors or other official committee has been appointed pursuant to Section 1102 of the

Bankruptcy Code.

## RELIEF REQUESTED

10.     Debtor requests an order authorizing, but not directing, the Debtor to: (a) continue

to operate its prepetition cash management system (the "Cash Management System") in

accordance with any applicable agreements governing the Bank Accounts (as defined below),

including any Bank Account Agreements (as defined below); (b) maintain Debtor's existing Bank

Accounts located at Bremer Bank ("Bank Accounts"), use Debtor's existing business forms (the

"Business Forms") and pay any related fees on account of the Bank Accounts (the "Bank Fees");

and (c) authorize applicable banks and other financial institutions (the "Banks") to accept and

honor all representations from Debtor as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law.

11.      Without the requested relief, Debtor's business operations would be disrupted. The requested relief is consistent with requirements imposed on Debtor pursuant to any interim or final order authorizing, among other things, Debtor's entry into the postpetition financing facility and use of cash collateral (the "DIP Order"), including with respect to any budgets governing or relating to the postpetition financing.

## CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BANK FEES

12.      In the ordinary course of business, Debtor maintains the Cash Management System. The Cash Management System comprises two bank accounts at Bremer Bank.

13.      Debtor deposits cash and checks received from customers in the Bank Accounts. All credit card payments are deposited into the Bank Accounts. Debtor's accounting department oversees the Cash Management System and implements controls for entering, processing, and releasing funds. Debtor's corporate accounting department reconciles Debtor's books and records to ensure that all transfers are accounted for properly.

14.      Debtor's revenue originates primarily from the sale of premium poultry products to regional grocery stores and food markets in Minnesota, Iowa, North Dakota, South Dakota, Missouri, and Nebraska.

15.      Daily operating expenses are paid out of the Bank Accounts.

16.      All checks and other disbursements are classified in Debtor's general ledger based upon how the individual vendor is identified in the accounting software, as determined by the Chief Financial Officer. All other disbursements require the approval of the Vice President of Finance, Chief Financial Officer or Chief Executive Officer. Copies of checks and supporting

documents are maintained by the Chief Financial Officer.

17.     Debtor's Bank Accounts are a checking account, ending in 6774, and another checking account intended to be used for payroll, ending in 5842, both located at Bremer Bank and insured by the Federal Deposit Insurance Corporation.

## CONTINUED USE OF THE CASH MANAGEMENT SYSTEM IS IN THE BEST INTEREST OF DEBTOR AND OTHER PARTIES IN INTEREST

18.     Debtor seeks authority to continue to use its existing Cash Management System, subject to the terms of the DIP Order. Given Debtor's operations, as well as the goal of preserving and enhancing its going concern value, a successful reorganization cannot be accomplished if there is substantial disruption in the Cash Management System.

19.     The basic structure of the Cash Management System constitutes Debtor's ordinary, usual, and essential business practices. The Cash Management System is similar to those commonly employed by corporate enterprises comparable to Debtor in size and complexity. The Cash Management System enables Debtor, as well as creditors and the Court, to trace funds through Debtor's accounting system. If Debtor was required to dismantle the Cash Management System, it would significantly impair its day-to-day operations and ability to generate timely reports of transactions and balances.

20.     Widespread use of similar cash management systems is attributable to numerous benefits, including the ability to tightly control corporate funds, ensure cash availability and reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. In addition, it would be time consuming, difficult, and costly for Debtor to establish a new cash management system, and doing so would disrupt Debtor's relationships with its key vendors. Preserving the "business as usual" atmosphere and avoiding the unnecessary and costly distractions that would inevitably be associated with any

substantial disruption in the Cash Management System will facilitate the Debtor's business efforts.

21.     Debtor will maintain records of all transfers with the Cash Management System to the same extent they were recorded by Debtor before the commencement of this Chapter 11 case. As a result, Debtor will record in its books and records any transfer made by Debtor that occurs on or after the Petition Date, and will provide reports of such postpetition transfers upon request to counsel for Debtor's postpetition lender, counsel for any creditors' committee appointed in this case, and the United States Trustee.

## CONTINUED USE OF THE BANK ACCOUNTS IS WARRANTED

22.     Absent authorization otherwise, a chapter 11 debtor is generally required to: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks for all debtor-in-possession bank accounts bearing the designation "Debtor in Possession," the bankruptcy case number, and the type of account.

23.     These requirements are designed to provide a clear demarcation between prepetition and postpetition claims and payments and prevent the inadvertent payment of prepetition claims by honoring checks issued before the Petition Date.

24.     To avoid delays in payments to administrative expense creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in Debtor's efforts to complete a successful reorganization, it is important that Debtor be permitted to continue to maintain the Bank Accounts following the commencement of this case, subject to a prohibition against honoring checks issued or dated before the Petition Date absent orders from this Court that would allow such checks to be honored.

25.    Preserving business continuity and avoiding the disruption and delay to Debtor's disbursement obligations that would necessarily result from closing the Bank Accounts and opening new bank account(s) will benefit all parties in interest, including employees and more vendors. Without the relief requested, Debtor would have to cancel disbursements that are already scheduled and reschedule those disbursements from new account(s). Inevitably, there would be confusion and some payments would be missed, which would undermine Debtor's reorganization efforts.

26.    Debtor also seeks an order authorizing Bremer Bank to continue to treat, service and administer the Bank Accounts as an account of Debtor as a debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all postpetition checks, drafts, wires, or ACH transfers drawn on the Bank Accounts to the extent Debtor has good funds standing to its credit with Bremer Bank.

27.    Bremer Bank should be authorized to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to, on or subsequent to the Petition Date.

28.    Pursuant to the relief requested herein, Bremer Bank shall not be liable to any party on account of (a) following the Debtor's instructions or representations as to any check or payment item that may be honored, (b) honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

29.    Debtor also requests authorization to pay or reimburse any bank fees, claims, costs, expense, or charges associated with the Bank Account. The Bank Fees should be afforded

administrative expense priority status pursuant to Section 503(b) of the Bankruptcy Code. Such Bank Fees constitute a necessary and appropriate expense given the benefits associated with maintaining the Bank Accounts through this case.

30.    Debtor further requests that any payment from the Bank Accounts at the request of Debtor made prior to the Petition Date (including any ACH transfer such bank is or becomes obligated to settle), or any instruments issued on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, be deemed to be paid prepetition, whether or not actually debited from the Bank Accounts prepetition.

31.    If granted the relief requested, Debtor will not pay, and Bremer Bank will be directed not to pay, any prepetition checks except as allowed by order of the Court. Debtor can identify those checks that should not be paid and supply such a list to Bremer Bank. Accordingly, any concerns of the U.S. Trustee regarding a clear demarcation between prepetition and postpetition payments can be satisfied here without the necessity of closing the Bank Account.

## USE OF EXISTING BUSINESS FORMS IS WARRANTED

32.    To minimize expenses, Debtor should be authorized to continue to use its correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks, and other business forms, substantially in the forms existing immediately before the Petition Date, without reference to their status as a debtor in possession; provided, however, that as soon as reasonably practicable, Debtor shall mark "Debtor in Possession" and the chapter 11 case number on any newly printed check stock. As a result of any press releases issued or to be issued by Debtor and other press coverage, parties doing business with Debtor undoubtedly will be aware of Debtor's status as a debtor in possession. In the absence of such relief, Debtor's estate will be required to bear a potentially significant expense that Debtor

7

respectfully submits is unwarranted.

33.     If Debtor is not permitted to maintain and use its Bank Accounts and continue to use its Business Forms as set forth herein, the resulting prejudice will include (a) disruption of the ordinary financial affairs and business operations of Debtor, (b) delay in the administration of Debtor's estate, (c) compromise of Debtor's internal controls and accounting system, and (d) cost to the estate to set up new systems and open new bank account(s) and print new business forms.

## REQUEST FOR EXPEDITED RELIEF

34.     Debtor requests expedited hearing on this Motion. Debtor has scheduled and served a number of "first day" motions designed to facilitate an orderly transition to Chapter 11. The granting of this Motion on an expedited basis will ensure that Debtor's operations continue uninterrupted. Any shutdown of Debtor's normal banking and cash management activities would damage relationships with customers and vendors, undermine employee confidence, and, at this critical juncture, further impair Debtor's liquidity and financial position. Expedited relief is essential to preserving the going-concern value of Debtor's estate for its employees, customers, vendors, lenders, and other parties in interest, and to induce stakeholders to continue working for or with Debtor.

35.     Additionally, by this Motion, Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." As set forth above and in the accompanying memorandum of law, the immediate continued use of the Cash Management System, the Bank Account, and the Business Forms is essential to prevent potentially irreparable damage to Debtor's operations, value, and ability to maximize the value of Debtor's estate.

8

Accordingly, Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

36.     No prior request for the relief sought in this Motion has been made by Debtor to this or any other court.

37.     Pursuant to Local Rule 9013-2(a), this Motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

38.     Pursuant to Local Rule 9013-2(c), Debtor gives notice that it may, if necessary, call George Peichel, Chief Financial Officer of Debtor to testify on behalf of Debtor about the factual matters raised in this Motion.

WHEREFORE, Debtor respectfully requests that the Court grant the Motion, grant expedited relief, grant the relief requested herein, and grant such other relief as the Court deems just and equitable.

Dated: September 20, 2024                 **TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ James M. Jorissen*
    James M. Jorissen, #262833
    Adam G. Chandler, #397408
    Schaan P. Barth, #397898
    2200 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    Telephone: 612-977-8400
    Facsimile: 612-977-8650
    jorissen@taftlaw.com
    achandler@taftlaw.com
    sbarth@taftlaw.com

**PROPOSED COUNSEL FOR THE DEBTOR**

## VERIFICATION

I, George Peichel, Chief Financial Officer of the Debtor named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated this <u>20th</u> day of September, 2024.

George Peichel

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.,                              Case No. 24-32426 KAC

           Debtor.                              Chapter 11 Case

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER (I) GRANTING EXPEDITED HEARING; (II) AUTHORIZING MAINTENANCE OF DEBTOR'S EXISTING CASH MANAGEMENT SYSTEM; (III) AUTHORIZING THE CONTINUED USE OF EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND THE PAYMENT OF RELATED BANK FEES; AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Debtor, by and through its undersigned counsel, submits this memorandum of law in support of its motion in the above-entitled matter and in accordance with Local Rule 9013-2(a).

## FACTUAL BACKGROUND

Debtor relies on the statement of facts set forth in the verified motion, the petition, schedules, statement of financial affairs, and Debtor's Declaration in Support of First Day Motions. The defined terms used in this Memorandum have the same meaning as in the accompanying motion.

## ARGUMENT

**I.    DEBTOR'S REQUEST FOR EXPEDITED RELIEF SHOULD BE GRANTED.**

Debtor requests expedited relief. Bankruptcy Rule 9006(c) provides that the Court may reduce the notice period for a motion "for cause shown." Cause exists here to grant the Motion on an expedited basis. If Debtor is not permitted to continue to use its Cash Management System in its current form, operations will be severely impaired, causing immediate and irreparable harm to

11

Debtor's estate and disabling Debtor from continuing business operations as normal. Expedited relief is therefore appropriate and should be granted.

## II.    DEBTOR SHOULD BE AUTHORIZED TO MAINTAIN ITS CASH MANAGEMENT SYSTEM.

This Court should authorize Debtor to continue using its existing Cash Management System, which is described in the Motion, in accordance with the Bank Account Agreements, to the extent applicable, and subject to the entry of the DIP Order. Given Debtor's operations, there is significant risk that a successful reorganization cannot be accomplished if there is substantial disruption in the Cash Management System.  It is essential that Debtor be permitted to continue operating its business without interruption.

The basic structure of the Cash Management System constitutes Debtor's ordinary, usual, and essential business practice. The Cash Management System is similar to systems commonly employed by corporate enterprises comparable to Debtor in size and complexity. The Cash Management System enables Debtor, as well as creditors and the Court, to trace funds through Debtor's accounting system. If Debtor was required to dismantle the Cash Management System, it would significantly impair its day-to-day operations and ability to generate timely reports of transactions and balances.

Comparable companies use similar cash management systems because of numerous benefits, including the ability to tightly control corporate funds, ensure cash availability, and reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance and presentment information. Debtor consummates many transactions each day through its Cash Management System. It would be onerous and costly for Debtor to establish a new system. Doing so would disrupt Debtor's relationships with key vendors. Debtor's reorganization, therefore, will be best served by preserving the business as usual Cash

12

Management System. Thus, allowing Debtor to continue to use the Cash Management System is in the best interests of the estate and its creditors.

Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) provides a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See In re Metro. Cosmetic & Reconstructive Surgical Clinic, P.A.*, 115 B.R. 185, 188 (Bankr. D. Minn. 1990); *see also In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992). Included within the purview of Section 363(c) is a debtor's ability to continue the routine transactions necessitated by a debtor's cash management system. *In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, Debtor seeks authority under Section 363(c)(1) to continue the collection, concentration, and disbursement of cash payments using its Cash Management System.

The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing Debtor's Cash Management System without interruption is vital to Debtor's ability to maximize the value of its assets. The Cash Management System is the mechanism whereby Debtor is able to transfer its revenue toward the payment of its obligations and without which Debtor could not effectively operate. It is well within the Court's equitable powers under Section 105(a) of the Bankruptcy Code to approve the continued use of the Cash Management System.

### III.    DEBTOR SHOULD BE AUTHORIZED TO MAINTAIN ITS BANK ACCOUNTS AND BUSINESS FORMS AND PAY RELATED BANK FEES.

Absent a court order authorizing otherwise, a chapter 11 debtor is generally required to:

     (a)       close all existing bank accounts and open new debtor-in-possession bank accounts;

     (b)       establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes;

     (c)       maintain a separate debtor-in-possession account for cash collateral; and

     (d)       obtain checks for all debtor-in-possession bank accounts bearing the designation "Debtor in Possession," the bankruptcy case number, and the type of account.

These requirements are designed to provide a clear demarcation between prepetition and postpetition claims and payments and protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

The Court has the authority to waive the strict enforcement of bank account closing requirements imposed pursuant to the guidelines adopted by the Office of the United States Trustee. Such relief is routinely granted in this district. *See, e.g., In re Magnetation LLC*, No. 15-50307 (Bankr. D. Minn. May 7, 2015) [ECF No. 58]; *In re Wagstaff Minn., Inc.*, No. 11-43073 (Bankr. D. Minn. May 5, 2011) [ECF No. 37]; *In re Genmar Holdings, Inc.*, No. 09-43537 (Bankr. D. Minn. June 4, 2009) [ECF No. 24]; *In re Intrepid U.S.A., Inc.*, No. 04-40416 (Bankr. D. Minn. Mar. 24, 2004) [ECF No. 65].

Debtor respectfully requests that the same relief be granted in this case. Debtor's continued use of the Bank Accounts and existing check stock is important to ensure a smooth transition into chapter 11 and to aid Debtor's efforts to maximize the value of its business. Requiring Debtor to open new bank account(s) at this early and critical stage of the chapter 11 case would be expensive, administratively difficult, and disrupt Debtor's operations. Replacement check stock may take a long time to arrive, disrupting Debtor's ordinary and orderly disbursements. Consequently, maintenance of the existing Bank Accounts and check stock is not only essential, but is in the best interest of all creditors and other parties in interest. If the requested relief is granted, Debtor will not pay, and its banks will be directed not to pay, any prepetition checks except as allowed by

order of the Court. Debtor can identify those checks that should not be paid and will supply such list to its banks. In this manner, the United States Trustee's concern regarding a clear demarcation between prepetition and postpetition payments can be enforced.

To minimize expenses, Debtor should be authorized to continue to use its correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks, and other business forms, substantially in the forms existing immediately before the Petition Date, without reference to their status as a debtor in possession; provided, however, that as soon as reasonably practicable, Debtor shall mark "Debtor in Possession" and the chapter 11 case number on any newly printed check stock. As a result of any press releases issued or to be issued by Debtor and other press coverage, parties doing business with Debtor undoubtedly will be aware of Debtor's status as a debtor in possession. In the absence of such relief, Debtor's estate will be required to bear a potentially significant expense that Debtor respectfully submits is unwarranted.

Finally, Debtor should also be authorized to pay or reimburse any bank fees, claims, costs, expense, or charges associated with the Bank Account. The Bank Fees should be afforded administrative expense priority status pursuant to Section 503(b) of the Bankruptcy Code. Such Bank Fees constitute a necessary and appropriate expense given the benefits associated with maintaining the Bank Accounts through the Chapter 11 process.

## IV.    BREMER BANK SHOULD BE AUTHORIZED TO HONOR AND PAY CHECKS.

Finally, Bremer Bank should be authorized to continue to treat, service and administer Debtor's account as an account of a debtor in possession without interruption and in the usual and ordinary course.  To that end, the Bremer Bank should be authorized to receive, process, honor, and pay any and all postpetition checks, drafts and wire, or ACH transfers drawn on Debtor's

15

account to the extent Debtor has good funds on deposit with Bremer Bank. Bremer Bank should similarly be authorized to accept and honor all representations from Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, and irrespective of whether such checks, drafts, wires, or ACH transfers are dated prior to, on or subsequent to the Petition Date. In carrying out these activities as authorized, Bremer Bank should have no liability to any party on account of (a) following Debtor's instructions or representations as to any check or payment item that may be honored, (b) honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

## **CONCLUSION**

For the foregoing reasons, Debtor respectfully requests that the Court enter an order granting the relief requested in the Motion.

Dated: September 20, 2024                     **TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ James M. Jorissen*
    James M. Jorissen, #262833
    Adam G. Chandler, #397408
    Schaan P. Barth, #397898
    2200 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    Telephone: 612-977-8400
    Facsimile: 612-977-8650
    jorissen@taftlaw.com
    achandler@taftlaw.com
    sbarth@taftlaw.com

**PROPOSED COUNSEL FOR THE DEBTOR**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.,                                    Case No. 24-32426 KAC

       Debtor.                                        Chapter 11 Case

## ORDER

This case is before the court on Debtor's Motion for an Order (I) Granting Expedited Hearing; (II) Authorizing Maintenance of Debtor's Existing Cash Management System; (III) Authorizing the Continued Use of Existing Bank Accounts and Business Forms and the Payment of Related Bank Fees; and (IV) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers, as more fully described in the Motion and accompanying Memorandum of Law. Based on the motion, and this court having determined that it is in the best interests of Debtor's estate to grant the Motion, and it appearing that due and proper notice of this Motion was given,

**IT IS HEREBY ORDERED:**

1.      Debtor's Motion is granted.

2.      Debtor's request for expedited relief is granted.

3.      Debtor is authorized and empowered, but not required, to continue to maintain, operate, and make transfers under its Cash Management System as described in the Motion in accordance with the Bank Account Agreements, as applicable.

4.      Debtor is authorized, but not required, to continue to maintain the Bank Accounts with the same account number following the commencement of this chapter 11 case. Bremer Bank is authorized to continue to treat, service, and administer Debtor's account as an account of a debtor in possession without interruption and in the usual and ordinary course, and to receive, process, honor,

17

and pay any and all postpetition checks, drafts, wire, or ACH transfers drawn on the Bank Accounts to the extent Debtor has good funds on deposit with Bremer Bank.

5.     Notwithstanding anything to the contrary in any other order of this Court, Bremer Bank is authorized to accept and honor all representations from Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to, on, or subsequent to the Petition Date.

6.     Debtor shall promptly: (a) issue "stop payment" orders and provide Bremer Bank with instruction not to pay those checks, drafts, wires, ACH transfers, and other withdrawals that Debtor specifically identifies in writing were made, drawn, or issued on account of prepetition claims that should not be paid, processed, or honored; and (b) provide Bremer Bank instruction with respect to the payment of any other checks, drafts, wires, ACH and other withdrawals from Debtor's account, which instructions may be general in nature, subject to any further specific instruction.

7.     Bremer Bank shall not be liable to any party on account of (a) following Debtor's instructions or representations as to any check or payment item that may be honored, (b) honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

8.     Debtor is authorized, but not directed, to continue to use their correspondence and business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks, and other business forms substantially in the forms existing immediately before the Petition Date without reference to its status as a debtor in possession; provided, however, that as soon as reasonably practicable, Debtor shall mark "Debtor in Possession" and the chapter 11 case number on any newly printed check stock.

9.     Debtor is authorized, but not required, to pay or reimburse any Bank Fees, and Bremer Bank is authorized, in the course of maintaining Debtor's account and without further order of this Court, to continue to debit from Debtor's account sufficient funds to satisfy any Bank Fees. Any claims for Bank Fees incurred after the Petition Date are entitled to administrative expense priority pursuant to Section 503(b) of the Bankruptcy Code.

10.     In accordance with its prepetition practices, Debtor shall maintain records of all transfers within the Cash Management System to the same extent they were recorded by Debtor before the commencement of this chapter 11 case. As a part thereof, Debtor shall record in its books and records any transfer made by Debtor that occurs on or after the Petition Date, and shall provide a report of such postpetition transfers upon request to counsel for Sandton Capital

18

Solutions Master Fund VI, LP (the "DIP Lender"), counsel for any creditors' committee appointed in these cases, and the United States Trustee.

11.     Any payments from Debtor's Bank Accounts at the request of Debtor made prior to the Petition Date (including any ACH transfer such Bank is or becomes obligated to settle), or any instruments issued by Bremer Bank on behalf of Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Accounts prepetition.

12.     Debtor is authorized to implement changes to the Cash Management System in the ordinary course of business, including opening any additional bank accounts; provided that Debtor shall give notice within ten (10) days of any opening or closing of any bank accounts to counsel for the DIP Lender, counsel for any creditors' committee appointed in these cases, and the United States Trustee.

13.     This Order shall apply to any and all bank accounts actually in, or linked to, the Cash Management System, even if such bank accounts do not appear on the list set forth in the Motion, and any and all bank accounts opened by Debtor on or after the Petition Date at any Bank shall be deemed a "Bank Account" (as if it had been opened prior to the Petition Date and listed in the Motion).

14.     Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

15.     Notwithstanding anything to the contrary herein, (a) any payments made or authorization contained hereunder, shall be subject to the requirements imposed on the Debtor pursuant to any interim or final order authorizing, among other things, Debtor's entry into the postpetition financing facility and use of cash collateral (the "DIP Order"), including any budgets governing or relating to the postpetition financing, and (b) to the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

16.     Notwithstanding Bankruptcy Rule 6003 and the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.     Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.     This Court shall retain jurisdiction over any and all matters arising from or related

to the implementation or interpretation of this Order.


Dated: _____                    _____
                                         United States Bankruptcy Judge


135018063v1