## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.                                   Case No. 24-32426 KAC

Debtor.                                   Chapter 11 Case

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT

Pure Prairie Poultry, Inc. ("Debtor"), the Debtor in the above-captioned chapter 11 case, through its undersigned attorneys, respectfully submits this application to retain and employ Epiq Corporate Restructuring, LLC as claims, noticing, and solicitation agent (this "Application"). In support of the Application, Debtor submits the *Declaration of Sophie Frodsham in Support of the Debtor's Application For Entry of an Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent* (the "Frodsham Declaration"), attached hereto, and makes reference to and incorporates the *Declaration of George Peichel, Chief Financial Officer of the Debtor in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[1] In further support of this Application, the Debtor states as follows:

### Relief Requested

1.      By this Application, Debtor seeks entry of an order authorizing the Debtor to employ Epiq Corporate Restructuring, LLC ("Epiq") as claims, noticing, and solicitation agent in

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

accordance with the terms and conditions set forth in the engagement letter dated September 3, 2024 (the "Engagement Letter"), attached hereto as **Exhibit A**.

## Jurisdiction and Venue

2.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 1408 and 1409.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

6.      Information regarding the Debtor's business, capital structure and the circumstances preceding the Petition Date may be found in the First Day Declaration.

## Request to Employ Epiq

7.      The Debtor requests approval to employ Epiq to serve as claims, noticing, and solicitation agent in this Chapter 11 case and to provide the services outlined in the Engagement Letter.  The Debtor believes that Epiq's employment is in the best interest of the estate.

8.      Epiq's rates are competitive and reasonable.  Epiq has the expertise required to serve as the claims, noticing, and solicitation agent in this Chapter 11 case.

2

9.      The Debtor requests that this Court authorize Epiq's employment.

## Compensation

10.     The Debtor requests that Epiq's fees and expenses be paid as an administrative expense in the ordinary course of the Debtor's business without further application or order of the Court.  Should a dispute develop, the matter will be brought to the Court for resolution.  Epiq has agreed to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.

11.     Epiq will provide a monthly invoice to the Debtor, Debtor's counsel, the U.S. Trustee, counsel for any official committee, and any party-in-interest who specifically requests service of the monthly invoices.

12.     Prior to the Petition Date, the Debtor provided Epiq an advance in the amount of $25,000.00.  Epiq will apply these funds in accordance with the Engagement Letter.

## Indemnification

13.     The Debtor has agreed to indemnify Epiq as set forth in the Engagement Letter. Notwithstanding anything to the contrary, Epiq will not be indemnified for liability arising out of gross negligence, willful misconduct, and certain other matters identified in the proposed order.

## Disinterestedness

14.     Epiq has reviewed its conflicts system to determine whether it has any relationships with the Debtor's creditors and other parties-in-interest.  Except as disclosed in the Frodsham Declaration, Epiq represents that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed in this Chapter 11 case.  To the best of the Debtor's knowledge, Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the

3

Bankruptcy Code.  Epiq agrees that it will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**Request for Bankruptcy Rule 6004 Waivers**

15.     The Debtor requests a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's ongoing operations.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Reservation of Rights**

16.     Nothing contained herein or any action taken pursuant to relief requested is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any party-in-interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtor's or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's or any party-in-interest's rights to subsequently dispute such claim.

4

**Notice**

17.     Notice of this Application has been provided by email or overnight courier to:

(a) the Office of the United States Trustee; (b) the holders of the thirty (30) largest unsecured

claims against the Debtor; (c) any party that has requested notice pursuant to Bankruptcy Rule

2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further

notice need be given.

**No Prior Request**

No prior request for the relief sought in this Application has been made by the Debtor to

this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form

attached hereto, granting the relief requested herein and granting such other relief as is just and

proper.

**TAFT STETTINIUS & HOLLISTER LLP**

Dated: September 20, 2024                    By: */s/ James M. Jorissen*
                                                 James M. Jorissen, #262833
                                                 Adam G. Chandler, #397408
                                                 Schaan P. Barth, #397898
                                                 2200 IDS Center
                                                 80 South Eighth Street
                                                 Minneapolis, MN 55402
                                                 Telephone: 612-977-8400
                                                 Facsimile: 612-977-8650
                                                 jjorissen@taftlaw.com
                                                 achandler@taftlaw.com
                                                 sbarth@taftlaw.com

                                             **PROPOSED COUNSEL FOR THE
                                             DEBTOR**

134971567v2

## VERIFICATION

I, George Peichel, Chief Financial Officer of the Debtor named in the foregoing motion,

declare under penalty of perjury that the foregoing is true and correct according to the best of my

knowledge, information and belief.

Dated this <u>20th</u> day of September, 2024.

George Peichel

## Exhibit A

**Engagement Letter**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2025. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3  Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4  Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5  Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6  In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7  To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.  Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5.  Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.  Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7.  Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs

3



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 9.  Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. General

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7    Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8    This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9    All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

    <u>If to Epiq</u>:

        Epiq Corporate Restructuring, LLC
        777 Third Avenue, 12th Floor
        New York, New York 10017
        Attn:  Brad Tuttle

    <u>If to Client</u>:

        _____
        _____
        _____
        _____

    <u>With a copy to</u>:

        _____
        _____

11.11 Invoices sent to Client should be delivered to the following address:

        _____
        _____
        _____
        _____

    Email:    _____

11.12  The "Effective Date" of this Agreement is September 3, 2024.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____

Name: Brad Tuttle
Title:   Senior Managing Director and GM

**PURE PRAIRIE POULTRY, INC.**

By: _____
Name: _____
Title: _____

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



- ➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- ➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- ➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- ➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- ➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

- ➢ Prepare and serve required notices in these Chapter 11 cases, including:

  - Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

  - Notice of any auction sale hearing;

  - Notice of the claims bar date;

  - Notice of objection to claims;

  - Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

  - Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

- ➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

- ➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



## PRICING SCHEDULE

### CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| IT / Programming | $60.00 – $85.00 |
| Case Managers | $85.00 – $180.00 |
| Consultants/ Directors/Vice Presidents | $185.00 – $195.00 |
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |

### CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

### DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

### ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

13



## CALL CENTER RATES

Standard Call Center Setup                          NO CHARGE

Call Center Operator                                $65 per hour

Voice Recorded Message                              $0.34 per minute

## OTHER SERVICES RATES

Strategic Communication Services                    Quoted at time of request

Escrow Services                                     Quoted at time of request /competitive rates

Rights Offering / ATOP Event                        Quoted at time of request

Virtual Data Room --
Confidential On-Line Workspace                      Quoted at time of request

Disbursements -- Check and/or Form 1099             Quoted at time of request

Disbursements -- Record to Transfer Agent           Quoted at time of request

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.                                    Case No. 24-32426 KAC

                         Debtor.                              Chapter 11 Case

## DECLARATION OF SOPHIE FRODSHAM IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT

I, Sophie Frodsham, under penalty of perjury, declare as follows:

1.       I am a Consulting Director at Epiq Corporate Restructuring, LLC ("Epiq" or "Agent"), a chapter 11 administrative services firm whose headquarters are located at 777 3rd Avenue, 12th Floor, New York, New York 10017.  Except as otherwise noted in this declaration (this "Declaration"), I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently as follows.

2.       I submit this Declaration in support of the *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent,* filed contemporaneously herewith (the "Application").[1]

3.       Epiq represents the following:

     a.       Epiq, its members, and employees are not and were not, within two years before the date of the filing of this chapter 11 case, creditors, equity security holders, insiders, or employees of the Debtor;

---

[1]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed in the Application.

b.      Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.      by accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.      in its capacity as the Claims and Noticing Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.      Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.      Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.      in its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h.      Epiq shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i.      Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.      none of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk.

4.      I caused to be submitted for review by Epiq's conflicts system the names of potential parties in interest in this Chapter 11 case. The results of the conflict check were compiled and reviewed by Epiq professionals under my supervision. Epiq is not aware of any connection that would present a disqualifying conflict of interest. Should Epiq discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental declaration.

5.      To the best of my knowledge, except as provided herein, neither Epiq, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors, or other

relevant parties.  Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

6.      I believe that Epiq is a "disinterested person" as that term is defined in section (101)14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Date: September 20, 2024

*/s/ Sophie Frodsham*
Sophie Frodsham

3

134971567v2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Pure Prairie Poultry, Inc.                                       Case No. 24-32426 KAC

               Debtor.                                       Chapter 11 Case

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, AND SOLICITATION AGENT

Upon the application ("Application")[1] of the Debtor (the "Debtor"), for entry of an order authorizing the Debtor to employ Epiq Corporate Restructuring, LLC ("Epiq") as claims, noticing, and solicitation agent in accordance with the terms and conditions set forth in the engagement letter dated September 3, 2024 (the "Engagement Letter"), attached to the Application as **Exhibit A**, as more fully set forth in the Application; and upon consideration of the First Day Declaration and the Frodsham Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Application having been given; and the relief requested in the Application being in the best interests of the Debtor's estate, its creditors and other parties-in-interest; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Application.

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Debtor is authorized to employ Epiq under the terms of the Engagement Letter attached to the Application as modified by this order (this "Order").

2.       Epiq is authorized and directed to perform the services as described in the Application, the Engagement Letter, and this Order.  If a conflict exists, this Order controls.

3.       The Clerk shall provide Epiq with Electronic Case Filing ("ECF") credentials that allow Epiq to receive ECF notifications and file certificates and/or affidavits of service.

4.       Epiq is a custodian of court records and is designated as the authorized repository for all proofs of claim filed in this case. Epiq shall maintain the official Claims Register(s) in this case.

5.       Epiq shall provide the Clerk with a certified duplicate of the official Claims Register(s) upon request.

6.       Epiq shall provide (i) an electronic interface for filing proofs of claim in this case; and (ii) a post office box or street mailing address for the receipt of proofs of claim sent by United States Mail or overnight delivery.

7.       Epiq is authorized to take such other actions as are necessary to comply with all duties and provide the Services set forth in the Application and the Engagement Letter.

8.       Epiq shall provide detailed invoices setting forth the services provided and the rates charged on a monthly basis to the Debtor, its counsel, the Office of the United States Trustee, counsel for any official committee, and any party-in-interest who specifically requests service of the monthly invoices in writing.

2

9.      Epiq shall not be required to file fee applications.  Upon receipt of Epiq's invoices, the Debtor is hereby authorized to compensate and reimburse Epiq for all undisputed amounts in the ordinary course in accordance with the terms of the Engagement Letter.  All amounts due to Epiq will be treated as § 503(b) administrative expenses.  Epiq may apply its advance in accordance with the Engagement Letter and the terms of this Order.

10.     The Debtor shall indemnify Epiq under the terms of the Engagement Letter, as modified and limited by this Order.  Notwithstanding the foregoing, Epiq is not indemnified for, and may not receive any contribution or reimbursement with respect to:

a.      Matters or services arising before this case is closed, any matter or service not approved by an order of this Court.

b.      Any matter that is determined by a final order of a court of competent jurisdiction that arises from (i) Epiq's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (ii) a contractual dispute if the court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; or (iii) any situation in which the court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002).  No matter governed by this paragraph may be settled without this Court's approval.

c.      This paragraph does not preclude Epiq from seeking an order from this Court requiring the advancement of indemnity, contribution, or reimbursement obligations in accordance with applicable law.

3

134971567v2

11.     In the event Epiq is unable to provide the services set out in this Order and/or the Engagement Letter, Epiq will immediately notify the Clerk and the Debtor's attorney and cause all original proofs of claim and data turned over to such persons as directed by the Court.

12.     After entry of an order terminating Epiq's services, Epiq shall deliver to the Clerk an electronic copy in pdf format of all proofs of claim.  Once the electronic copy has been received by the Clerk, Epiq may destroy all proofs of claim in its possession sixty days after filing a Notice of Intent to Destroy on the Court's docket.

13.     Nothing in this order constitutes (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's or any party-in-interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or non-bankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtor's or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate.  Any payment made pursuant to this order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

14.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

4

134971567v2

16.     The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of this order.

17.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.  The scope of Epiq's services may be altered only on further order of this Court.

Dated: _____, 2024

_____
UNITED STATES BANKRUPTCY JUDGE

5