**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 11 |
| Pure Prairie Poultry, Inc., | Case No. 24-32426 KAC |
| Debtor. | **Ref. Docket Nos. 5-17, 19, & 21-23** |

<u>**CERTIFICATE OF SERVICE**</u>

I, AMY HENAULT, hereby certify that:

1. I am employed as a Case Manager by Epiq Corporate Restructuring, LLC, with their principal office located at 777 Third Avenue, New York, New York 10017. I am over the age of eighteen years and am not a party to the above-captioned action.

2. I caused to be served the:

    a. "Notice of Intention to Seek Expedited Hearing," dated September 20, 2024 [Docket No. 5], (the "Hearing Notice"),

    b. "Declaration of George Peichel in Support of Chapter 11 Petition and First Day Motions," dated September 20, 2024 [Docket No. 6], (the "First Day Declaration"),

    c. "Notice of Hearing and Motion for an Expedited Hearing and for an Order Authorizing Debtor to Pay the Prepetition Section 503(b)(9) and Pasa Claims of Certain Critical Vendors," dated September 20, 2024 [Docket No. 7], (the "Critical Vendor Motion"),

    d. "Notice of Hearing and Motion for an Expedited Hearing and for an Order Authorizing the Debtor to Honor and Continue Certain Customer Loyalty Promotions in the Ordinary Course of Business," dated September 20, 2024 [Docket No. 8], (the "Customer Programs Motion"),

    e. "Notice of Hearing and Motion for an Expedited Hearing and for an Order Authorizing the Debtor to Pay Insurance Premiums and Maintain Insurance Policies," dated September 20, 2024 [Docket No. 9], (the "Insurance Motion"),

    f. "Notice of Hearing and Motion for an Expedited Hearing and for an Order (I) Authorizing the Debtor to Pay Pre-Petition Wages, Payroll Taxes, and Employee Benefits; and (II) Authorizing Payroll Provider and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief," dated September 20, 2024 [Docket No. 10], (the "Employee Wages Motion"),

g.  "Notice of Hearing and Motion for an Expedited Hearing and for an Order Authorizing the Debtor to Pay Pre-Petition Real Property Taxes," dated September 20, 2024 [Docket No. 11], (the "Taxes Motion"),

h.  "Notice of Hearing and Motion for an Order (I) Granting Expedited Hearing; and (II) Establishing Procedures Regarding Adequate Assurance of Future Performance for Utilities," dated September 20, 2024 [Docket No. 12], (the "Utilities Motion"),

i.  "Notice of Hearing and Motion for Interim and Final Orders (I) Granting Expedited Hearing, (II) Approving Postpetition Financing, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Authorizing Use of Cash Collateral, (V) Granting Adequate Protection, (VI) Modifying Automatic Stay, and (VII) Granting Related Relief," dated September 20, 2024 [Docket No. 13], (the "DIP Motion"),

j.  "Notice of Hearing and Motion for Interim and Final Orders (I) Granting Expedited Hearing, (II) Approving Postpetition Financing, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Authorizing Use of Cash Collateral, (V) Granting Adequate Protection, (VI) Modifying Automatic Stay, and (VII) Granting Related Relief," dated September 20, 2024, *related to Docket No. 13*, a copy of which is annexed hereto as Exhibit A, (the "DIP Motion Slipsheet"),

k.  "Declaration of Alex Dybsky in Support of Motion for Debtor-In-Possession Financing and Use of Cash Collateral," dated September 20, 2024 [Docket No. 14], (the "DIP Motion Declaration"),

l.  "Application to Employ Taft Stettinius & Hollister LLP as Debtor's Counsel," dated September 20, 2024 [Docket No. 15], (the "Taft Application"),

m.  "Application for Order Authorizing Employment of Lakeshore Food Advisors, LLC as Investment Bankers and Financial Advisors," dated September 20, 2024 [Docket No. 16], (the "Investment Banker Application"),

n.  "Motion to Extend Time to File Schedules and Statements of Financial Affairs," dated September 20, 2024 [Docket No. 17], (the "SOFA Motion"),

o.  "Notice of Hearing and Motion for an Order (I) Granting Expedited Hearing; (II) Authorizing Maintenance of Debtor's Existing Cash Management System; (III) Authorizing the Continued Use of Existing Bank Accounts and Business Forms and the Payment of Related Bank Fees; and (IV) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers," dated September 20, 2024 [Docket No. 19], (the "Cash Management Motion"),

p.  "Notice of Hearing and Motion for an Expedited Hearing and for an Order Extending to Automatic Stay to Corporate Officers George Peichel and Mike Helgeson," dated September 20, 2024 [Docket No. 21], (the "Automatic Stay Motion"),

q.  "Application for an Order Authorizing Employment of Lighthouse Management Group, Inc. as Corporate Restructuring Officer," dated September 20, 2024 [Docket No. 22], (the "CRO Application"), and

r.  "Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Claims, Noticing, and Solicitation Agent," dated September 20, 2024 [Docket No. 23], (the "Epiq Claims Agent Application"),

by causing true and correct copies of the:

i.  Hearing Notice, First Day Declaration, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion Slipsheet, and DIP Motion Declaration to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit B, on September 20, 2024,

ii.  Hearing Notice, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion Slipsheet, and DIP Motion Declaration to be enclosed securely in a postage pre-paid envelope and delivered via overnight mail to the party listed on the annexed Exhibit C, on September 20, 2024,

iii.  Hearing Notice and Utilities Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit D, on September 20, 2024,

iv.  Hearing Notice and Employee Wages Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit E, on September 20, 2024,

v.  Hearing Notice and Insurance Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit F, on September 20, 2024,

vi.  Hearing Notice and Taxes Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit G, on September 20, 2024,

vii.  Hearing Notice and Critical Vendor Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit H, on September 20, 2024,

viii.  Hearing Notice and Customer Programs Motion to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed Exhibit I, on September 20, 2024,

ix. Hearing Notice, DIP Motion Slipsheet, and DIP Motion Declaration to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit J</u>, on September 20, 2024,

x. Hearing Notice, First Day Declaration, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion, and DIP Motion Declaration to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit K</u>, on September 20, 2024,

xi. Hearing Notice, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion, and DIP Motion Declaration to be delivered via electronic mail to the party listed on the annexed <u>Exhibit L</u>, on September 20, 2024,

xii. Hearing Notice and Utilities Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit M</u>, on September 20, 2024,

xiii. Hearing Notice and Employee Wages Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit N</u>, on September 20, 2024,

xiv. Hearing Notice and Insurance Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit O</u>, on September 20, 2024,

xv. Hearing Notice and Taxes Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit P</u>, on September 20, 2024,

xvi. Hearing Notice and Critical Vendor Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit Q</u>, on September 20, 2024,

xvii. Hearing Notice and Customer Programs Motion to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit R</u>, on September 20, 2024,

xviii. Hearing Notice, DIP Motion, and DIP Motion Declaration to be delivered via electronic mail to the party listed on the annexed <u>Exhibit S</u>, on September 20, 2024,

xix. Hearing Notice, First Day Declaration, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion, and DIP Motion Declaration delivered via electronic mail to: *michael.fadlovich@usdoj.gov*, on September 20, 2024,

xx. Hearing Notice, First Day Declaration, Critical Vendor Motion, Customer Programs Motion, Insurance Motion, Employee Wages Motion, Taxes Motion, Utilities Motion, DIP Motion Slipsheet, and DIP Motion Declaration to be delivered via facsimile to those parties listed on the annexed <u>Exhibit T</u>, on September 20, 2024,

xxi.   Hearing Notice and Utilities Motion to be delivered via facsimile to those parties listed on the annexed <u>Exhibit U</u>, on September 20, 2024,

xxii.  Hearing Notice and Employee Wages Motion to be delivered via facsimile to those parties listed on the annexed <u>Exhibit V</u>, on September 20, 2024,

xxiii. Hearing Notice and Insurance Motion to be delivered via facsimile to those parties listed on the annexed <u>Exhibit W</u>, on September 20, 2024,

xxiv.  Hearing Notice and Taxes Motion to be delivered via facsimile to those parties listed on the annexed <u>Exhibit X</u>, on September 20, 2024,

xxv.   Taft Application, Investment Banker Application, SOFA Motion, Cash Management Motion, Automatic Stay Motion, CRO Application, and Epiq Claims Agent Application to be enclosed securely in separate postage pre-paid envelopes and delivered via overnight mail to those parties listed on the annexed <u>Exhibit Y</u>, on September 23, 2024,

xxvi.  Cash Management Motion to be enclosed securely in a postage pre-paid envelope and delivered via overnight mail to the party listed on the annexed <u>Exhibit C</u>, on September 23, 2024,

xxvii. Taft Application, Investment Banker Application, SOFA Motion, Cash Management Motion, Automatic Stay Motion, CRO Application, and Epiq Claims Agent Application to be delivered via electronic mail to those parties listed on the annexed <u>Exhibit Z</u>, on September 23, 2024,

xxviii. Cash Management Motion to be delivered via electronic mail to the party listed on the annexed <u>Exhibit L</u>, on September 23, 2024, and

xxix.  Taft Application, Investment Banker Application, SOFA Motion, Cash Management Motion, Automatic Stay Motion, CRO Application, and Epiq Claims Agent Application to be delivered via facsimile to those parties listed on the annexed <u>Exhibit T</u>, on September 23, 2024.

3.  All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO THE ATTENTION OF ADDRESSEE, PRESIDENT, OR LEGAL DEPARTMENT."

*/s/ Amy Henault*
Amy Henault

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

In re:

Pure Prairie Poultry, Inc.,                          Case No. 24-32426 KAC

            Debtor.                          Chapter 11 Case

**NOTICE OF HEARING AND MOTION FOR INTERIM AND FINAL ORDERS (I)**
**GRANTING EXPEDITED HEARING, (II) APPROVING POSTPETITION FINANCING,**
**(III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (IV) AUTHORIZING USE OF CASH COLLATERAL, (V)**
**GRANTING ADEQUATE PROTECTION, (VI) MODIFYING AUTOMATIC STAY,**
**AND (VII) GRANTING RELATED RELIEF**

TO:      THE PARTIES-IN-INTEREST AS SPECIFIED IN LOCAL RULE 9013-3.

     1.      The above-named Debtor ("Debtor"), through its undersigned attorneys, moves the court for the relief requested below and gives notice of hearing.

     2.      The court will hold a hearing on this motion for expedited hearing and on the portion of this Motion seeking interim orders at 3:00 p.m. on Wednesday, September 25, 2024 before the Honorable Katherine A. Constantine, Courtroom 8, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415. A hearing on the portion of this Motion seeking final orders will be held at a date and time to be determined before the Honorable Katherine A. Constantine, Courtroom 8, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

     3.      Local Rule 9006-1(b) provides deadlines for responses to this Motion. However, given the expedited nature of the relief sought with respect to the portion of the Motion seeking entry of interim orders, Debtor does not object to written responses being served and filed two hours prior to the hearing. Any response to the Motion for entry of final orders must be filed and served no later than at least two (2) hours prior to the hearing, pursuant to the applicable Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. The petition commencing Debtor's chapter 11 case was filed on September 20, 2024 (the "Petition Date"). The case is now pending before this court.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This motion arises under 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, and Fed. R. Bankr. P. 4001(b).  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 4001-2 and 9013.

7.      Debtor is authorized to operate its business and manage the property of the estate as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee has been appointed.

8.      Information about the Debtor's  business and the events leading up to the Petition Date can be found in the Declaration of George Peichel in Support of Chapter 11 Petition and First Day Motions, filed on September 20, 2024 (the "Peichel Declaration"), which is incorporated herein by reference.

## REQUEST FOR RELIEF

9.      By this Motion, Debtor seeks immediate access to postpetition financing in order to ensure its continued operations during this case as it implements a sale process.  To accomplish this task, Debtor requires the use of a postpetition credit facility consisting of a non-revolving

line of credit as more fully described below up to an aggregate principal amount of $15,000,000 (the "DIP Financing"), pursuant to the Post-Petition Loan and Security Agreement described below.  The DIP Financing will provide Debtor with the liquidity needed to fund its operations, bankruptcy costs including professional fees, working capital needs and general corporate purposes during this case.

10.    Without the DIP Financing, Debtor will lack sufficient liquidity to ensure uninterrupted operations.  Any cessation in operations will, in turn, likely result in immediate liquidation, the loss of more than 138 jobs and severe losses for vendors, customers and creditors. The Debtor's customers, its employees and all of Debtor's other constituents depend on Debtor's ability to access the DIP Financing so that Debtor can continue operating while a sale process takes place seeking to maximize recoveries for the estate and creditors.

11.    Debtor requests that the Court enter an interim order (the "Interim DIP Order") and a final order (the "Final DIP Order" and, collectively with the Interim DIP Order, the "DIP Orders").  The Interim DIP Order is attached hereto as Exhibit A and the Final DIP Order will be served and filed at least 10 days prior to the Final Hearing.  In summary, Debtor requests orders granting:

    a.    authority, pursuant to sections 105, 363, and 364(c) and 364(d) of the Bankruptcy Code, for Debtor to obtain senior secured postpetition financing in an aggregate principal amount of up to $15,000,000 (of which, (1) upon entry of this Interim Order and satisfaction or waiver of the borrowing conditions set forth in the DIP Loan Documents (as defined below), $7,500,000 (the "Initial Draw") shall be made available to Debtor within one business day, (2) (a) upon entry of the Final Order and (b) entry of the Bidding Procedures Order, Debtor may request an additional $2,500,000 (the "Second

3

Draw"), and (3) following the Second Draw, Debtor may request from the DIP Lender a final optional draw of $5,000,000 (the "Optional Draw"), which the DIP Lender shall have sole discretion to determine whether to fund.

b.     authority for Debtor to enter into that certain senior secured, Post-Petition Loan and Security Agreement, among Debtor as Borrower and Sandton Capital Solutions Master Fund VI, LP and/or one or more of its designees, as Lender (the "DIP Lender") in substantially the same form as attached hereto as Exhibit A (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement" and, together with any ancillary, collateral or related documents and agreements, the "DIP Loan Documents");

c.     authority for Debtor to grant to the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and superpriority claims, including allowed superpriority administrative expense claims pursuant to sections 364(c)(1) and 503(b) of the Bankruptcy Code, subject only to the Permitted Encumbrances pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code in the Collateral (as defined below) (and all proceeds thereof), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, ("Cash Collateral"), to secure all DIP Obligations (as defined below), as more fully set forth in this Interim Order;

d.     waiver by Debtor of all rights to surcharge against the Collateral of the DIP Lender pursuant to section 506(c) of the Bankruptcy Code;

4

e.      subject to and only effective upon entry of the Final Order, waiver of the equitable doctrine of marshaling or any other similar doctrine with respect to any collateral of the DIP Lender and the Prepetition Secured Parties;

f.      modification of the automatic stay to the extent hereinafter set forth and waiving the 14-day stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h);

g.      the scheduling of a final hearing (the "Final Hearing") on the Motion for a date to be determined to consider entry of the Final DIP Order *inter alia,* authorizing borrowings under the DIP Facility on a final basis and approving notice procedures with respect thereto; and

h.      related relief.

12.     Debtor further requests that the Court enter an interim order (the "Interim Cash Collateral Order") and a final order (the "Final Cash Collateral Order" and, collectively with the Interim Cash Collateral Order, the "Cash Collateral Orders").  The Interim Cash Collateral Order is attached hereto as Exhibit B and the Final Cash Collateral Order will be served and filed at least 10 days prior to the Final Hearing.  In summary, Debtor requests orders granting authority for Debtor to grant to the Prepetition Secured Parties (as defined below) valid, enforceable, non-avoidable, automatically and fully perfected replacement liens and security interests in the Collateral to the same extent and having the character and dignity as existed prior to the filing of the Petition, and subject to any liens or priority claims that may arise pursuant to sections 361, 362, 363(c)(2) and 363(e) of the Bankruptcy Code, in order to secure diminution in value of the Prepetition Collateral, as more fully set forth in the Interim Cash Collateral Order, and all subject to the senior lien and super-priority liens and claims of the DIP Lender.

**RULE 4001 STATEMENT**

13.     Pursuant to Local Rule 4001-2(a), attached hereto as Exhibit C is Debtor's 13-week cash flow projections (the "Proposed Budget").

14.     Pursuant to Fed. R. Bankr. P. 4001(b), the following summarizes the significant terms of the DIP Credit Agreement and the Interim DIP Order.  Debtor believes that the following provisions of the DIP Credit Agreement and the Interim DIP Order are justified and necessary in the context and circumstances of these cases.[1]

| Lender: | Sandton Capital Solutions Master Fund VI, LP and/or one or more of its designees (the "Lender"). |
|---|---|

---

[1] The following summary is provided for ease of reference only.  To the extent of any inconsistency as between the following summary and either the DIP Credit Agreement and/or the Interim DIP Order, the DIP Credit Agreement and/or Interim DIP Order (as applicable) shall control.  All capitalized terms used in this summary but not otherwise capitalized herein shall have the meanings given to them in the DIP Credit Agreement.

| Borrower: | Pure Prairie Poultry Inc. |
|---|---|
| **Line of Credit Commitment:** | Total aggregate principal amount not to exceed $15 million (<u>see</u> proviso in Funded Amount below), subject to entry of the Final DIP Order by the Court. |
| **Use of Proceeds:** | The proceeds from the Line of Credit will be available to the Borrower to fund Borrower's expenses in accordance with the Budget.  The Budget will be agreed to by the Borrower and the DIP Lender and will include, without limitation, budgeted professional fees. It is understood that all Packers and Stockyards Act liens will paid in full as described below. |
| **Funded Amount:** | <ul><li>**<u>Initial Draw: $7.5 million</u>**.  This amount will be immediately available for draw in accordance with the DIP Loan Documents upon the approval and entry of the Interim DIP Order by the Bankruptcy Court. All Packers and Stockyards Act obligations shall be fully repaid with the Initial Draw.</li><li>**<u>Second Draw upon Final DIP Order: $2.5 million</u>**. Upon (a) entry of a Final DIP Order, and (b) entry of the Bidding Procedures Order, the Borrower may draw an additional $2.5 million, subject to the Funding Dates below.</li><li>**<u>Optional Supplemental Draw: $5 million.</u>** Subsequent to the Second Draw, the Borrower may request to draw up to an additional $5 million.  Lender shall have no obligation to fund the Optional Draw and may elect to fund such Optional Draw in its sole discretion based upon its assessment of the likelihood that a Sale Transaction can be consummated that will allow for the payment in full of all Obligations owed to Lender under the DIP Loan Documents.</li></ul> |

| Funding Dates: | • **<u>Initial Draw, $7.5 million</u>**, available on the entry of the Interim DIP Order and following the satisfaction of all other conditions as set forth in the DIP Credit Agreement. |
| --- | --- |
| | • **<u>Second Draw of up to an Additional $2.5 million</u>**. Upon (a) entry of a Final DIP Order, and (b) approval of the Bidding Procedures Order, and subject to the satisfaction of all other conditions as set forth in the DIP Credit Agreement, the Borrower may make an Additional Draw of up to $2.5 million |
| | • **<u>Optional Supplemental Draw: $5 million.</u>** Subsequent to the Second Draw, the Borrower may request to draw up to an additional $5 million. Lender shall have no obligation to fund the Optional Draw and may elect to fund such Optional Draw in its sole discretion based upon its assessment of the likelihood that a Sale Transaction can be consummated that will allow for the payment in full of all Obligations owed to Lender under the DIP Loan Documents. |

| | |
|---|---|
| **Maturity:** | Lender will be entitled to immediate repayment of all outstanding obligations under the DIP Credit Agreement on the earliest to occur of (the "<u>Line of Credit Termination Date</u>"):<br><br>(a) the closing of a sale approved by the Bankruptcy Court of all or a portion of the Borrower's assets;<br>(b) the effective date of any chapter 11 plan confirmed by the Bankruptcy Court;<br>(c) the occurrence of an Event of Default; and<br>(d) the date that is ninety (90) days following the date on which Lender disburses the Initial Draw.<br><br>Notwithstanding the foregoing, following entry of the Final DIP Order and the funding of the Second Draw (and the Optional Draw, if requested), Borrower may request an extension of up to an additional 90 days of the Line of Credit Termination Date to consummate a Sale Transaction that is in progress and/or to complete the wind down of the bankruptcy estate, upon payment of an extension fee equal to one percent (1%) of the total Obligations outstanding to Lender as of the date of the extension request (the "Maturity Extension"). Lender shall have no obligation to grant any request for a Maturity Extension but will evaluate any request for the same in good faith based upon its reasonable assessment of the likelihood that a Sale Transaction will be consummated that will allow for all Obligations owing under the DIP Loan Documents to be paid in full. |
| **Amortization:** | None. |
| **Prepayment:** | The Line of Credit will be prepayable in full or in part by the Borrower on one or more occasions. There will be a mandatory repayment of the Line of Credit upon the sale of any assets outside of the ordinary course of business or the Budget. |
| **Loan Interest Rates and Fees:** | The DIP Loan interest rates and fees will be as follows:<br>(i)    **<u>Issuance Fee:</u>** The Borrowers agree to an issuance fee of $375,000, which fee will be earned and payable upon the funding of the Initial Draw (and which will be capitalized and added to the outstanding principal balance of the Loan).<br>(ii)   **<u>Cash Interest:</u>** None.<br>(iii)  **<u>PIK Interest:</u>** The Borrower will pay the Lender paid-in-kind interest ("PIK interest") at 20.0% <u>per annum</u> on the outstanding principal amount of the Loan, |

|  | which shall be capitalized and added to the outstanding principal balance of the Loan on a monthly basis. PIK interest will not be counted against draw limits for any of the draws contemplated in the DIP Credit Agreement. |
|  | (iv) **Exit Fee:** The Borrower will pay the Lender an exit fee equivalent to the greater of: (a) 2.0% of the total amount funded by Lender to Borrower under or in connection with the DIP Credit Agreement, or (b) such amount as will ensure that Lender has recovered at least a 1.4x MOIC (or in the event that the Bankruptcy Court has not approved a Bidding Procedures Order including a Stalking Horse Bid within thirty (30) days of the funding of the Initial Draw, a 1.6x MOIC) inclusive of all accrued and paid-in-kind interest and fees. The Exit Fee shall be payable by Borrower to Lender upon the earlier of (a) the Line of Credit Termination Date and (b) the date on which the Obligations under the DIP Credit Agreement and/or the Line of Credit Note are paid in full; provided, however, that in the event of a partial prepayment by Borrower under the DIP Credit Agreement (either voluntary or mandatory), Borrower shall pay the corresponding *pro rata* portion of the Exit Fee contemporaneously with any such prepayment. |
|  | (v) **Default Interest Rate:** During the occurrence and continuance of an Event of Default, the PIK Interest rate will increase by 200 b.p. |
|  | (vi) **Unused Fee:** Borrower agrees to pay to Lender an unused fee equal to 1% per annum on the undrawn portion of the Line of Credit Commitment, which on a monthly basis shall be calculated as of the first day of each month and capitalized and added to the principal balance of the Line of Credit. |
| **Chapter 11 Case Milestones:** | Borrower shall achieve the following Milestones:<br><br>   (a) Throughout the Chapter 11 Case and until all Obligations owed to Lender are paid in full, Borrower shall remain within Ten Percent (10%) of its revenue projections as reflected on its rolling thirty (30) day Budget;<br><br>   (b) On or before the 28th calendar day after the Petition Date, the Bankruptcy Court shall have entered the Final DIP Order; |

10

|  | (c) On or before the 45th calendar day following the date on which Lender funds the Initial Draw, the Bankruptcy Court shall have entered the Bidding Procedures Order;<br><br>(d) On or before the 85th calendar day after the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance satisfactory to Lender, approving the Borrower's entry into a Sale Transaction and authorizing Borrower to consummate such Sale Transaction; and<br><br>(e) On or before the 100th calendar day after the Petition Date, Borrower shall have consummated the Sale Transaction. |
|---|---|
| **Collateral Security and Priority:** | The collateral for the Line of Credit (the "Collateral") will include pursuant, to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, (i) a fully perfected, first priority security interest in all of Borrower's assets not subject to Permitted Encumbrances, including but not limited to all such presently owned or hereafter acquired Accounts, Chattel Paper, Commercial Tort Claims, Avoidance Actions, Deposit Accounts, real property interests including the Owned Real Property, Documents, Equipment, Fixtures, General Intangibles, all Intellectual Property Collateral, Goods, Inventory, Instruments, Investment Property, Letter of Credit Rights, Payment Intangibles, Supporting Obligations, insurance policies, all books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs and computer records) pertaining to the foregoing, and all Products and Proceeds (including cash collateral, as defined in section 363 of the Bankruptcy Code and all accessions to, substitutions for, and all replacements, products, and cash and non-cash proceeds of the foregoing, including proceeds of and unearned premiums with respect to insurance policies, and claims against any Person for loss, damage or destruction of any Collateral), and (ii) a security interest in all assets of Borrower subject to Permitted Encumbrances, junior only to such Permitted Encumbrances |
| **Subordination:** | As a condition to Lender funding the Initial Draw, Borrower shall have delivered to Lender documentation or other evidence, satisfactory to Lender in its sole discretion, demonstrating that existing Lien holders have either: (i) agreed to fully subordinate their respective Liens and rights to payment to the Liens in favor of Lender and to Lender's rights to payment; or (ii) were duly and properly noticed with the Motion to approve the Interim DIP Order and Final DIP Order |

11

| | and failed to object to the entry by the Bankruptcy Court of the Interim DIP Order.<br><br>As a condition to Lender funding the Second Draw, Borrower shall have delivered to Lender documentation or other evidence, satisfactory to Lender in its sole discretion, demonstrating that existing Lien holders have either: (i) agreed to fully subordinate their respective Liens and rights to payment to the Liens in favor of Lender and to Lender's rights to payment; or (ii) were duly and properly noticed with the motion to approve the Interim DIP Order and Final DIP Order and failed to object to the entry by the Bankruptcy Court of the Final DIP Order. |
|---|---|
| **Covenants:** | Affirmative, negative, and other financial and operational covenants customary for transactions of this type, including but not limited to:<br>• Minimum cash balance of at least $250,000 (which may be funded from borrowed funds)<br>• Limitations on capital expenditures<br>• No dividends or any other upstream payments<br>• No Change of Control, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code<br>• Maintenance of appropriate insurances and having the Lender as a beneficiary of such insurance policies<br>• Limitations on additional debt, guarantees, and hedging arrangements, including the subordination of all intercompany indebtedness<br>• Limitations on liens and further negative pledges.<br>• Limitations on sales, transfers, and other dispositions of assets, except as may be permitted under applicable provisions of the Bankruptcy Code, including, but not limited to Sections 363 or 1129 of the Bankruptcy Code<br>• Limitations on loans and investments<br>• Limitations on creating new subsidiaries or becoming a general partner in any partnership |
| **Credit Bidding Rights:** | Lender will have the right to credit bid on any asset sales |
| **Representations and Warranties:** | Usual and customary representations and warranties, including organization in good standing, validity of agreements, tax status, compliance with law, and operational and financial disclosures. |
| **Events of Default:** | Events of Default will include, in addition to other such events customarily found in similar transactions: |

| | |
|---|---|
| | - Failure to meet Milestones<br>- Payment defaults<br>- Covenant defaults<br>- Representation or warranty breaches<br><br>Among other remedies, upon the occurrence of an Event of Default, the Lender may accelerate all of the Obligations owing to Lender under the Loan Documents. |
| **Expenses:** | The Borrower will be responsible for the Lender's out of pocket fees and expenses incurred by the Lender in connection with the preparation, negotiation, execution, management, administration, and/or enforcement of the Loan Documents including but not limited to Lender's attorneys' fees and fees of other retained professional advisors. |
| **Contingencies:** | As a condition to Lender funding the Initial Draw, Borrower shall have delivered to Lender documentation or other evidence, satisfactory to Lender in its sole discretion, demonstrating that multiple interested bidders are progressing toward submitting Stalking Horse Bids for all or substantially all of Borrower's assets in a Sale Transaction. |

### PREPETITION FINANCING FACILITIES

15.     As of the Petition Date, Debtor owes a total of approximately $62.8 million ("Prepetition Secured Obligations") in principal plus accrued interest to the Prepetition Secured Parties (defined below).

16.      Prior to the Petition Date, Bremer Bank, Community Bank and Trust, Ford Motor Credit Company LLC, Union Bank & Trust, Michael Helgeson, First Corporate Solutions, Waldinger Corporation, Henkel Construction Company, Steelcase Financial Services, Inc., First Cooperative Association, Centra Sota Cooperative, Gold Eagle Cooperative, and Premier Cooperative (collectively, "Prepetition Secured Parties") made loans, advances, provided agricultural supplies, provided improvements to Debtor's facilities, and provided other financial accommodations to Debtor.

17.     As it relates to Bremer Bank, Debtor is a borrower under a Business Loan Agreement, dated May 4, 2023, and a Business Loan Agreement (Asset Based), dated September 9, 2023. To secure repayment, on May 4, 2023, the Debtor executed a Commercial Security Agreement, which granted to Bremer Bank a purchase money security interest in all equipment financed with the loan proceeds. To secure repayment of the September 9, 2023 Agreement, Debtor executed a Commercial Security Agreement which granted to Bremer Bank a first priority lien and security interest in a broad array of the Debtor's assets. The May 4, 2023 and September 9, 2023 Bremer Agreements are cross-collateralized. As of the Petition Date, Debtor owes Bremer Bank at least $8,356,074.00 under the above-referenced agreements.

18.     As it relates to Community Bank and Trust ("CB&T"), Debtor is a borrower under a loan pursuant to the Food Supply Chain Guaranteed Loan Program ("FSC Loan"), guaranteed by the United States Department of Agriculture, dated April 26, 2023.  The FSC Loan is secured by a first priority  Construction Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of April 26, 2023 in the original principal amount of $36,742,500.00 (the "CB&T Construction Mortgage") and recorded in the Office of the Floyd County Recorder on May 4, 2023 as Instr. No. 2023 0754.  A true and correct copy of the CB&T Construction Mortgage is attached hereto as <u>Exhibit D</u>.  As of the date of the Petition, the Debtor owed CB&T principal of $35,269,286.29 and accrued and unpaid interest in the amount of $996, 625.30, for a total of $36,265,911.59 of debt secured by the CB&T Construction Mortgage.

19.     As it relates to Ford Motor Credit Company LLC ("Ford Credit") and Union Bank and Trust, Debtor is borrower under several purchase money equipment finance facilities used to purchase automobiles for use in the business. As of September 12, 2024, the outstanding balance on the automobile loans to Ford Credit was $145,792.59.  As of the same date, the

outstanding balance to Union Bank & Trust was $95,744.40. To secure repayment of the automobile debt to Ford Credit and Union Bank and Trust, Debtor granted Ford Credit and Union Bank and Trust a security interest in each vehicle financed by Ford Credit and Union Bank and Trust.

20.     In June 2022, Michael Helgeson, the Chairman of Debtor's Board of Directors, provided purchase money financing necessary to fund the Debtor's purchase of the plant and was granted a first priority, purchase money mortgage in the real estate and improvements to the property where the poultry processing plant is located.  To secure repayment of the purchase money loans, the Debtor executed and delivered to Mr. Helgeson a Purchase Money Mortgage, Security Interest, Assignment of Leases and Rents, and Fixture Financing Statement in the original principal amount of $9,954,000 on Debtor's plant (the "Original Helgeson Mortgage").

21.     The Original Helgeson Mortgage was thereafter superseded by an Amended and Restated Purchase Money Mortgage dated as of April 26, 2023 (the "Amended Helgeson Mortgage") securing repayment of the original principal sum of $13,754,000.00.  The Amended Helgeson Mortgage was thereafter duly recorded in the Office of the Floyd County Recorder as Document No. 2023 0755 on May 4, 2023.  A true and correct copy of the Amended Helgeson Mortgage is attached hereto as Exhibit E. As of September 19, 2024, the  amount the Debtor owes on the loans secured by the Amended Helgeson Mortgage against the Plant  include principal in the amount of $13,754,000, together with accrued and unpaid interest in the amount of $3,350,236.04, for a total prepetition secured claim of $17,104,236.04

22.     Pursuant to Subordination Agreements dated as of April 26, 2023, Michael Helgeson agreed to subordinate his rights to payment under the notes secured by the Amended Helgeson Mortgage to the CB&T Construction Mortgage.

23.     As it relates to First Corporate Solutions, on or about May 23, 2024, Debtor entered into a Factoring and Security Agreement ("Factoring Agreement") with Southstar Financial, LLC ("Southstar"), which was subsequently assigned to First Corporate Solutions ("First Corporate"). The Factoring Agreement provides that the total outstanding funds advanced to Debtor shall not exceed $10,000,000.   Pursuant to the Factoring Agreement, First Corporate may purchase Debtor's accounts in an amount not to exceed 85% of the face amount of each account sold.   As of the Petition Date, Debtor has $1,820,872 in outstanding invoices corresponding to $1,547,741 in funds advanced under the Factoring Agreement.  Debtor expects all funds advanced under the Factoring Agreement to be satisfied by its outstanding invoices.

24.     As it relates to Henkel Construction Company ("Henkel") and Waldinger Corporation ("Waldinger") (collectively, "Contractors"), Debtor hired these Contractors to make improvements to Debtor's plant. The Contractors hold, or may claim to hold, mechanics liens on Debtor's plant for improvements made to Debtor's plant. As of September 16, 2024, Waldinger holds a mechanics lien on Debtor's plant in the amount of $1,133,926 for improvements made to Debtor's plant. As of September 17, 2024 Henkel recently filed a mechanics lien against the Plant but has agreed to subordinate any liens or interests it may have in the Debtor's real property and improvements at the plant to the DIP Financing  in exchange for the Debtor's authorization to CB&T to release approximately $1.9 million to Henkel to secure discharge of an earlier filed lien.

25.     As it relates to Waldinger's asserted mechanics lien in the amount of $1,133,926, according to Waldinger's lien statement, Waldinger began work on Debtor's plant on February 27, 2024 and completed its work on June 10, 2024. CB&T, however, recorded the CB&T Construction Mortgage upon the Debtor's processing plant and associated real property on May

16

4, **2023**, nearly ten months before Waldinger commenced its work. Accordingly, because Iowa law does not accord priority to a mechanics lien claimant for claims that relate to work performed after the recording of the Construction Mortgage, the Waldinger lien is junior and inferior to the CB&T Construction Mortgage. Likewise, the Waldinger lien is junior and inferior to the Amended Helgeson Mortgage, which preexisted the Waldinger filing by nearly a year.

26. According to a January 14, 2023 Appraisal Report ("Appraisal Report") of Debtor's plant, the "as is" condition of the property and improvements at the time was $18.7 million, while the Appraisal Report projected that the plant could be improved, with significant investments for improvements and equipment, to a value of $47.63 million. *See* Exhibit F. While Debtor has made substantial improvements to its plant, the Debtor was unable to complete all contemplated improvements or to purchase and have installed all equipment contemplated in the Appraisal Report. The Debtor estimates it would cost several million dollars to finish the work necessary to complete the improvements contemplated by the Appraisal Report. Given that Debtor owes $more than $53 million on the 2023 CB&T Construction Mortgage and the Amended Helgeson Mortgage, and the Debtor's plant is well short of the "As Complete" condition set forth in the Appraisal Report, Waldinger's mechanics lien on Debtor's plant is effectively unsecured and there is no collateral to which it can attach. Accordingly, Waldinger will be adequately protected if it is granted replacement liens – subordinate to the DIP Financing—having the same character, value, validity and dignity as existed prior to the Petition Date.

27. Prior to the Petition, Centra Sota Cooperative, Gold Eagle Cooperative, Premier Cooperative, and First Cooperative Association (collectively, "Agricultural Suppliers") supplied the Debtor with feed on credit that was used to feed the Debtor's chickens. Pursuant to Iowa Code §570A.3, the Agricultural Suppliers possessed prepetition liens upon all livestock that

consumed the feed as well as the proceeds from such sales. As of September 16, 2024, the Agricultural Suppliers asserted input liens for the following amounts: (1) First Cooperative Association, $356,214.64; (2) Centra Sota Cooperative, $640,499.43; (3) Gold Eagle Cooperative, $96,880.33; and (4) Premier Cooperative, $1,595,899.67.

28.    All of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Parties including but not limited to Bremer Bank.

## OTHER POTENTIAL LIEN CLAIMANTS

29.    In addition to the Prepetition Secured Parties, as of the Petition Date, the Debtor owed approximately $3.5 million in principal plus accrued interest to the Disputed Prepetition Secured Claims (defined below).

30.    Prior to the Petition Date, Family Funding Group, LLC ("FFG"), Dynasty Capital 26, LLC ("Dynasty"), ACE Funding Source LLC ("Ace"), and Liquidity Access LLC ("Liquidity Access") (collectively, "the Disputed Prepetition Secured Claims") made loan, advances and provided other financial accommodations to Debtor.

31.    On or about July 8, 2024, the Debtor entered into a Standard Merchant Cash Advance Agreement ("Cash Advance Agreement") with Family Funding Group LLC ("FFG"), pursuant to which Debtor sold a portion of its future revenue stream to FFG. The purchase price was $500,000; Debtor received $450,000 while $50,000 was allocated to underwriting and related expenses. FFG is entitled to 25% of receivables (as defined in the Cash Advance Agreement) on a daily basis until the amount remitted to FFC reaches $749,500. The Debtor disputes any and all liens FFG may attempt to assert and/or enforce in this bankruptcy case. FFG

18

did not perfect its security interest, so the lien is avoidable under 11 U.S.C. § 544. In addition,
because no future receivables of the pre-petition Debtor exist following the Petition Date, FFG
is at best a general unsecured creditor. *See Matter of Cornerstone Tower Serv., Inc.*, A17-4050,
2019 WL 127359, at *3 (Bankr. D. Neb. Jan. 3, 2019). As of the Petition Date, Debtor owes FFG
$249,500.

32.    The Debtor and Dynasty entered into a Sale of Future Receipts Agreement ("Future
Receipts Agreement") with Dynasty on or about July 18, 2024, pursuant to which Debtor sold a
portion of its future revenue streams to Dynasty.  The purchase price was $2,200,000; Debtor
received $250,000 while $50,000 was applied to an origination fee and $1,900,000 was applied
to an existing balance on a similar agreement between the parties.  Dynasty is entitled to 35% of
Debtor's revenue on a daily basis until the amount remitted to Liquidity Access reaches
$3,300,000.   The Debtor disputes that Dynasty is entitled to a secured claim.  Like FF&G,
Dynasty did not perfect its security interest by filing a UCC-1 financing statement.  Any lien
Dynasty may now claim is therefore avoidable under 11 U.S.C. § 544(a)(1).  In addition, because
the pre-petition Debtor will have no revenue  following the Petition Date, Dynasty is an
unsecured creditor. *See Matter of Cornerstone Tower Serv., Inc.*, A17-4050, 2019 WL 127359,
at *3 (Bankr. D. Neb. Jan. 3, 2019). As of the Petition Date, Debtor owes Dynasty $2,272,500.

33.    Ace and the Debtor entered into a Revenue Purchase Agreement and Security
Agreement and Guaranty of Performance ("RPA No.1 ") dated August 6, 2024, pursuant to
which Debtor sold a portion of its future revenue stream to Ace.  The purchase price was
$200,000; Debtor received $100,058, $20,000 served as the origination fee and $79,942 went
towards an existing balance on a similar agreement between the parties.  Ace is entitled to 3.01%
of Debtor's revenue on a daily basis until the amount remitted to Ace reaches $299,800.  In

addition, Debtor entered into a Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("RPA No. 2") with Ace on or about August 7, 2024, pursuant to which Debtor sold a portion of its future revenue stream to Ace.  The purchase price was $111,000; Debtor received $99,900 and $11,100 served as the origination fee.  Ace is entitled to 1.67% of Debtor's revenue on a daily basis until the amount remitted to Ace reaches $166,389.00.  To secure repayment of the amounts advanced by Ace, the Debtor granted Ace a security interest in accounts and in various other items of collateral. Nevertheless, Debtor disputes any and all liens Ace attempts to assert and/or enforce.  Ace filed its UCC-1 financing statement on September 9, 2024, less than two weeks prior to the date of the Petition.  Ace's late perfection of its lien may be avoidable in accordance with 11 U.S.C. § 547. *See* 11 U.S.C. §547. In addition, because no future receivables exist following the Petition Date, Ace is an unsecured creditor. *See Matter of Cornerstone Tower Serv., Inc.*, A17-4050, 2019 WL 127359, at *3 (Bankr. D. Neb. Jan. 3, 2019). As of the Petition Date, Debtor owes Ace $372,943.

34.     Liquidity Access and the Debtor entered into a Future Receivables Sale and Purchase Agreement ("Future Receivables Agreement") with Liquidity Access on or about August 16, 2024, pursuant to which Debtor sold a portion of its future revenue stream to Liquidity Access.  The purchase price was $500,000; Debtor received $282,757.50 while $50,000 was allocated to underwriting and related expenses and $167,242.50 was allocated to an existing balance on a similar agreement between the parties.  Liquidity Access is entitled to 32% of Debtor's revenue on a daily basis until the amount remitted to Liquidity Access reaches $750,000.  Liquidity Access may claim a lien or other security interest in and to the  Debtor's assets.  The Debtor, however, disputes any and all liens Liquidity Access may attempt to assert in these proceedings.  Liquidity Access did not perfect its security interest. In addition, because

no future receivables exist following the Petition Date, Liquidity Access is an unsecured creditor.

*See Matter of Cornerstone Tower Serv., Inc.*, A17-4050, 2019 WL 127359, at *3 (Bankr. D. Neb. Jan. 3, 2019). As of the Petition Date, Debtor owes Liquidity Access $645,000.

## DEBTORS' NEED FOR ONGOING FINANCING AND USE OF CASH COLLATERAL

35.     The Debtor needs access to the cash collateral ("Cash Collateral") and debtor in possession financing ("DIP Financing") to, among other things, (a) purchase goods from and make payments to vendors on a current basis post-petition; (b) continue to pay employees; and (c) pay ordinary operating expenses to fund inventory acquisition, utilities, taxes and fees.  The Debtor's cash needs are set forth in the accompanying 13-week budget.

36.     The Debtor analyzed whether it could finance operations during this case using only the Cash Collateral. The Debtor concluded that DIP Financing is necessary for a number of reasons.  First, the Debtor considered such factors as the uncertainty inherent in estimating the timing of receipts and disbursements and the need for access to continued periodic incremental liquidity during this case in order to maintain the going concern value of its estate.  Second, the Debtor requires the support of its vendors and other suppliers in order to replenish inventory and maintain ordinary course operations during the case. The availability of DIP Financing sends a strong signal of support to vendors and suppliers that Debtor will have adequate funding available to pay post-petition obligations. It will also enable the Debtor to fund valid pre-petition statutory trust interests, which in turn will help to ensure that the Debtor will have access to growers to help raise the chickens the Debtor ultimately processes and sells.  Third, Debtor considered extraordinary or one-time costs that have been or will be incurred in this including costs incurred for professional fees for Debtor, the Unsecured Creditors Committee and secured creditors, insurance renewal costs, and to address the rights of third parties such as utility companies to

21

demand and receive deposits.  The Debtor concluded that risks associated with attempting to

finance operations with cash collateral outweighed benefits and certainty provided by the use of

DIP financing.  If approved, the DIP Financing will preserve and enhance the value of the

Debtor's estate and, as such, entry into the DIP Financing is a sound exercise of the Debtor's

business judgment.

37.    The Debtor was unable to obtain any alternative proposals for DIP Financing

despite numerous inquiries.

38.    Under the DIP Financing, Debtor will pay a $375,000 Issuance Fee, 1% on the

undrawn portion of the Line of Credit Commitment, 2.5% of the facility amount as a Funding

Fee, 1.0% as a Commitment Fee, and the greater of (a) 2% of the total amount funded by the

DIP Lender or (b)(i) 1.4x the amount of DIP Lender's invested capital or (ii) 1.6x of the amount

of DIP Lender's invested capital in the event that the Bankruptcy Court has not approved the

Bidding Procedures Order including a Stalking Horse Bid within thirty (30) days of the funding

of the Initial Draw.  In addition, the Debtor will pay all reasonable and documented costs and

expenses of DIP Lender in connection with the preparation, negotiation, execution, and/or

administration of the Loan Documents. The Fees are in line with market rates and other DIP

facilities approved in recent retail cases.

39.    Debtor, with the assistance of Lakeshore Food Advisors, LLC and its other

advisors, determined that the proposal submitted by the DIP Lender is the only proposal

available at this time.

40.    Debtors and the DIP Lender negotiated the DIP Credit Agreement in a good

faith and arm's length manner, with the advice of sophisticated counsel and advisors.  The DIP

Credit Agreement represents the best and most favorable financing available to Debtor under the circumstances.

## PROPOSED DIP FINANCING

41.     Recognizing the Debtor's need for financing, and in consultation with its advisors, Debtor negotiated with the DIP Lender regarding the terms of potential DIP financing. As the result of good faith, arms-length negotiations, the DIP Lender has agreed to make available up to $15,000,000 of post-petition financing. The terms of the DIP Credit Agreement are summarized above.

42.     As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Lender requires, and Debtor agreed, that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and the Interim Order, and in accordance with the Approved Budget, solely to pay expenses incurred by Debtor in the ordinary course of business and which are permitted to be paid by this Court and the Bankruptcy Code, in accordance with and up to the amounts provided for in the Budget.

43.     As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, Debtor and the DIP Lender have agreed that the proceeds of Collateral (as defined in Post-Petition Loan and Security Agreement (Exhibit A)) shall be applied in accordance with the Interim DIP Order.

## ADEQUATE PROTECTION

44.     As a result of the granting of the DIP Liens, the incurrence of the DIP Obligations (as defined in the DIP Credit Agreement (Exhibit D)), the subordination of the Prepetition Secured Parties and Disputed Prepetition Secured Claims, the use of Cash Collateral, and the imposition of

the automatic stay, the Prepetition Secured Parties and potentially the Disputed Prepetition Secured

Claims are entitled to receive adequate protection pursuant to Sections 361, 362, 363 and 364 of

the Bankruptcy Code and as set forth in the Interim Cash Collateral Order.

45.    As adequate protection for the Prepetition Secured Parties, Debtor proposes that the

Prepetition Secured Parties receive (i) adequate protection liens in the amount equal to the

aggregate diminution in value of the interests in the Prepetition Collateral (including Cash

Collateral) from and after the Petition Date, a valid replacement security interest in and lien on all

prepetition and postpetition property and assets of Debtor and its estate, including the DIP

Collateral and all proceed thereof, subordinate only to the DIP Liens (as defined in the Interim DIP

Order), and (ii) payments as set forth in the Proposed Budget (to the extent applicable).

46.    As adequate protection for the Disputed Prepetition Secured Claims, Debtor

proposes that the holders of Disputed Prepetition Secured Claims receive (i) adequate protection

liens in Debtors' postpetition assets of the same character, value, validity and dignity as existed

prior to the Petition Date.

**NOTICES**

47.    Prior to the hearing on the Motion for a final order authorizing use of cash, and in

settlement of any and all matters raised in this Motion, Debtor may enter into a stipulation or

agreed order with parties claiming a security interest in cash collateral assets of Debtor concerning

the use of cash collateral, adequate protection and other related matters. In the event that Debtor

enters into any such stipulation, it will seek approval of the stipulation without further notice or

hearing pursuant to Rule 4001(d)(4) of the Federal Rules of Bankruptcy Procedure, and DEBTOR

HEREBY GIVES NOTICE OF THEIR INTENTION TO SEEK APPROVAL OF ANY SUCH

STIPULATION.

24

48.     Pursuant to Local Rule 9013-2(a), this Motion is accompanied by a memorandum of law, proposed order, and proof of service.

49.     No prior request for the relief sought in this Motion has been made by Debtor to this or any other court.

50.     Pursuant to Local Rule 9013-2(c), Debtor gives notice that it may, if necessary, call George Peichel, Chief Financial Officer of Debtor to testify on behalf of Debtor about the factual matters raised in this Motion.

WHEREFORE, Debtor request that the Court (a) enter the Interim DIP Order authorizing the Debtor to obtain the DIP Financing substantially in the form attached hereto as Exhibit A, and a final order granting the relief requested herein, and (b) enter the Interim Cash Collateral Order in the form attached hereto as Exhibit B authorizing the debtor to use cash collateral and to provide adequate protection as set forth herein, and (c) that the Court grant such other and further relief as is just an proper.

Dated: September 20, 2024

**TAFT STETTINIUS & HOLLISTER LLP**

By: _/s/ James M. Jorissen_____
    James M. Jorissen, #262833
    Adam G. Chandler, #397408
    Schaan P. Barth, #397898
    2200 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    Telephone: 612-977-8400
    Facsimile: 612-977-8650
    jorissen@taftlaw.com
    achandler@taftlaw.com
    sbarth@taftlaw.com

**PROPOSED COUNSEL FOR THE DEBTOR**

## VERIFICATION

I, George Peichel, Chief Financial Officer of the Debtor named in the foregoing motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated this 20th day of September, 2024.

George Peichel

**EXHIBIT A**

Interim DIP Order

(*See attached*)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

|                                    |     |                          |
| ---------------------------------- | --- | ------------------------ |
| In re:                             | :   | Chapter 11               |
|                                    | :   |                          |
| PURE PRAIRIE POULTRY INC.,         | :   | Case No. 24-32426 (KAC)  |
|                                    | :   |                          |
|                                    | :   |                          |
|                                    | :   |                          |
|                                    | :   |                          |
|               Debtor.              | :   |                          |
|                                    | :   |                          |
|                                    | :   |                          |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 364, 503 AND 507 (I)
AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (II)
GRANTING LIENS AND SUPERPRIORITY CLAIMS TO POST-PETITION LENDER,
AND (III) SCHEDULING FINAL HEARING**

Upon the motion (the "Motion") [D.I. ___] of Pure Prairie Poultry Inc. (the "Debtor") in the

above-captioned case (the "Chapter 11 Case"), pursuant to sections 105, 362, 364, 503 and 507 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the

1

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the [Minnesota Bankruptcy Local Rules] (the "Local Bankruptcy Rules"), seeking, among other things:

(a)       entry of this interim order (the "Interim DIP Order") and a final order (the "Final DIP Order") authorizing the Debtor to obtain post-petition financing (the "DIP Loans") consisting of a non-revolving line of credit in an aggregate principal amount not to exceed $15,000,000.00 (the "DIP Facility"), from Sandton Capital Solutions Master Fund VI, LP, and/or one or more of its designees (the "DIP Lender") pursuant to that certain Post-Petition Loan and Security Agreement, dated as of September [•], 2024, attached to the Motion as Exhibit 1 (as amended, modified, restated, or supplemented in accordance with the terms thereof or hereof, the "Loan Agreement"),[1] and all instruments, financing statements and documents as may be executed and delivered in connection with or relating to the DIP Facility, this Interim DIP Order and/or the Final DIP Order (subject to its entry) and any certificate or other document made or delivered pursuant hereto or thereto (collectively with the Loan Agreement, the "DIP Loan Documents"), and perform all such other and further acts as may be required in connection with the DIP Loan Documents;

(b)       scheduling a final hearing (the "Final Hearing") to consider entry of the Final DIP Order, and in connection therewith, approving the manner of notice of the Final Hearing; and

(c)       granting the Debtor such other and further relief as is just and proper;

And the Court having considered the Motion, the exhibits attached thereto, the Declaration of George Peichel in Support of the Debtor's First Day Motions (the "First Day Declaration"); and a hearing to consider entry of this Interim DIP Order having been held before the Court on September 25, 2024 (the "Interim Hearing"); and all objections, if any, to the interim relief

---

[1] All capitalized terms used but not defined herein shall have the meanings stated in the Loan Agreement.

requested in the Motion and the entry of this Interim DIP Order having been withdrawn, resolved, or overruled by the Court as reflected on the record of the Interim Hearing; and upon all of the pleadings filed with the Court, all evidence presented in support of the entry of this Interim DIP Order, the arguments of counsel stated on the record of the Interim Hearing, and all of the proceedings held before the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any conclusions of law herein constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction over the Motion and the transactions contemplated by the DIP Loan Documents pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are sections 105, 362, 364, 503 and 507 of the Bankruptcy Code.

D.      On September 20, 2024, the Debtor served copies of the Motion and notice of the Interim Hearing (collectively, the "Notice") in accordance with Bankruptcy Rule 4001 to all creditors and parties in interest entitled to such notice,  including: (i) the Office of the U.S. Trustee for this District; (ii) those parties listed as holding the twenty (20) largest unsecured claims against the Debtor's estate; (iii) the DIP Lender and its counsel; (iv) any other secured parties of record or

parties that, to the Debtor's knowledge, may assert a lien and/or security interest (each as defined in section 101 of the Bankruptcy Code) in property of the Debtor's estate; (v) the Internal Revenue Service; and (vi) any party that has requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  Under the circumstances, such Notice of the Interim Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002, 4001, and 9014 and the Local Rules, and no other or further notice of the Interim Hearing or the interim relief granted in this Interim DIP Order is necessary or required, except as set forth herein with respect to the Final Hearing.

E.       On September 20, 2024 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (the "Court"). The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Committee") has been appointed in the Chapter 11 Case.

F.       The Debtor's use of its cash is insufficient, alone, to meet the Debtor's immediate post-petition liquidity needs. As a result, an immediate and critical need exists for the Debtor to obtain post-petition financing in order to maximize the value of the Debtor's estate, for the benefit of creditors and other parties in interest, via an expedited sale process for substantially all assets of the Debtor's estate.

G.       Notwithstanding efforts of the Debtor and its retained professionals to do so, the Debtor is unable to obtain sufficient post-petition financing (i) in the forms of (1) unsecured debt incurred in the ordinary course of business allowable as an administrative expense under section

4

503(b)(1) of the Bankruptcy Code, (2) unsecured debt incurred outside the ordinary course of business allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, or (3) secured debt incurred outside the ordinary course of business secured by liens *pari passu* or junior to Existing Liens (defined below) (ii) on terms more favorable than those embodied in the Loan Agreement and the other DIP Loan Documents. The DIP Lender is prepared to enter into the DIP Loans solely on the terms set forth in the Loan Agreement and the other DIP Loan Documents.

H.      The terms of the DIP Loans are fair, just, and reasonable under the circumstances, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.  The liquidity to be provided under the DIP Loan Documents and this Order will enable the Debtor to continue to operate its business in the ordinary course and preserve the value of the Debtor's business pending the sale of substantially all of its assets.

I.      The terms of the DIP Loans have been negotiated in good faith and at arm's length by and between the Debtor and the DIP Lender.

J.      Any credit extended or other indebtedness or liabilities arising under, in respect of, or in connection with the this Interim DIP Order, or any DIP Loan Document, shall be deemed to have been extended in "good faith" by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code and this Order.

K.      The relief requested in the Motion and granted in this Interim DIP Order is necessary, essential, and appropriate for the management and preservation of the Debtor's assets and property and is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

111894545_6

135081807v1

L.    Absent the relief granted herein, the Debtor's estate will be immediately and irreparably harmed.

M.    Good, adequate, and sufficient cause has been shown to justify the relief granted herein and the immediate entry and effectiveness of this Interim DIP Order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is **GRANTED** on an interim basis as set forth herein. Any objections to the entry of this Interim DIP Order that have not been  previously resolved or withdrawn are hereby overruled on their merits.

2.    The Loan Agreement and the other DIP Loan Documents are **APPROVED** in their entirety, and the Debtor is hereby authorized to execute and enter into, deliver, and perform all obligations thereunder.

3.    The Debtor is hereby authorized to borrow up to an aggregate principal amount of [Seven Million Five Hundred Thousand Dollars ($7,500,000)] under the DIP Facility on an interim basis, to be used solely as expressly provided in the Loan Agreement and the other DIP Loan Documents, and in accordance with the approved budget (the "Budget") attached hereto as **Exhibit A**, subject to the Permitted Variance, and as may be updated pursuant to Section 5.1 of the Loan Agreement.

4.    In furtherance of the foregoing and without further approval of this Court, the Debtor is hereby authorized to perform all acts, to make, execute and deliver all instruments and documents, and to pay all related fees, consistent with the terms of this Interim DIP Order, that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loans.

111894545_6

135081807v1

5. All of the DIP Liens (defined below) shall be effective and perfected as of the date of entry of this Interim DIP Order without the necessity of the execution, recording, or filing of security agreements, pledge agreements, financing statements, or other agreements or instruments.

6. The Loan Agreement and the "Obligations" (as defined in the Loan Agreement) constitute valid, binding, and non-avoidable obligations of the Debtor enforceable against the Debtor and its successors and assigns in accordance with the terms of this Interim DIP Order and the DIP Loan Documents, and shall survive the dismissal of this Chapter 11 Case or the conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code and shall be binding upon any subsequently appointed chapter 7 trustee.

7. No obligation, payment, transfer, or grant of security under this Interim DIP Order or the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

8. The DIP Loans shall (a) be evidenced by the books and records of the DIP Lender and, upon the request of the DIP Lender, a note executed and delivered to the DIP Lender by the Debtor in accordance with the terms of the DIP Loan Documents, (b) bear interest at the rates set forth in the Loan Agreement, (c) be secured in the manner specified below and under the applicable DIP Loan Documents, (d) be payable in accordance with the applicable DIP Loan Documents, and (e) otherwise be governed by the terms set forth in this Interim DIP Order and the DIP Loan Documents.

7

9.      The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application, or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or permitted under or by virtue of this Interim DIP Order or any of the other DIP Loan Documents, including, without limitation, (a) to implement the DIP Facility to the extent authorized by this Interim DIP Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the "Collateral" (as defined in the Loan Agreement), and (c) to assess, charge, collect, advance, deduct, and receive payments with respect to the Obligations, including, without limitation, all principal, interest, fees, costs, and expenses permitted under the DIP Loan Documents, and to apply such payments to the Obligations pursuant to the DIP Loan Documents.

10.      The DIP Lender shall have no obligation to make any DIP Loans or any other financial accommodation under the respective DIP Loan Documents unless the conditions precedent to make such extensions of credit under the respective DIP Loan Documents have been satisfied in full or expressly waived in writing and in accordance with such DIP Loan Documents.

11.      Pursuant to section 364(c)(1) of the Bankruptcy Code, the Obligations constitute (without the need to file a proof of claim) superpriority claims (the "DIP Superpriority Claims") against the Debtor, with priority over any and all administrative expenses of the Debtor, whether now existing or hereafter arising or incurred, of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

12.      As security for the full and timely payment of the Obligations, the DIP Lender is hereby granted: (i) pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-

8

avoidable, fully perfected, first-priority senior security interests in and liens upon all Collateral (as

defined in the Loan Agreement) that was not subject to any valid, enforceable and non-avoidable

lien in existence on the Petition Date, which lien was either properly perfected as of the Petition

Date, or subsequently perfected pursuant to section 546(b) of the Bankruptcy Code (an "Existing

Lien"); and (ii) pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-

avoidable, fully perfected, first-priority senior priming security interests in and liens upon all

Collateral that was subject to an Existing Lien as of the Petition Date (the security interests and

liens granted to DIP Lender in (i) and (ii) above, collectively, the "DIP Liens").  As required by

section 364(d)(2), all holders of Existing Liens impacted by the DIP Liens (the "Primed Parties,"

and, such Existing Liens, the "Primed Liens") granted pursuant to section 364(d)(1) are adequately

protected as and to the extent set forth in the [CASH COLLATERAL ORDER].  All Primed Liens

are hereby primed by and made subject and subordinate to the perfected first-priority senior DIP

Liens granted to DIP Lender hereunder, which senior priming DIP Liens in favor of DIP Lender

shall also prime any liens granted following the commencement of the Chapter 11 Case to provide

adequate protection in respect of any of the Primed Liens.

13.    The DIP Liens shall be effective immediately upon entry of this Interim DIP Order.

This Interim DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and

priority of the DIP Liens without the necessity of executing, filing, or recording any mortgage,

security agreement, pledge agreement, financing statement, or other instrument or document, or

the taking of any other act that otherwise may be required under state or federal law, rule, or

regulation of any jurisdiction to validate or perfect the DIP Liens or to entitle the DIP Lender to

the priorities granted herein, provided, however, the Debtor may execute, and the DIP Lender is

hereby authorized to execute, file, and/or record mortgages, security agreements, pledge

agreements, financing statements, and/or other instruments or documents to evidence the DIP Liens and the Debtor is hereby authorized, promptly upon a demand by the DIP Lender made in accordance with the terms of the DIP Loan Documents, to execute, file, and/or record any such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents as the DIP Lender may reasonably request; provided, however, that no such execution, filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens. A copy of this Interim DIP Order may, in the discretion of the DIP Lender, be filed with or recorded in any filing or recording office in addition to or in lieu of such mortgages, security agreements, pledge agreements, financing statements, or other instruments or documents, and each and every federal, state, and local governmental agency, department, or office is hereby directed to accept a copy of this Interim DIP Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Interim DIP Order and the other DIP Loan Documents, for filing and recording, and to deem this Interim DIP Order to be in proper form for filing and recording.  All cash of the Debtor, including the cash in its deposit accounts and other accounts, wherever located, shall be subject to the DIP Liens and no control agreement governing, or other possession or control over, such cash shall be necessary or required in order to perfect the DIP Liens in respect of such cash.

14.    The DIP Liens shall not be (a) subject to any lien that is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code or (b) subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.

15.    Absent indefeasible payment in full in cash of all Obligations of the Debtor and termination of the Loan Agreement, the Debtor shall not (a) grant or impose any liens on the Collateral, or (b) prime or seek to prime the DIP Liens.

111894545_6

135081807v1

16.     In no event shall any person or entity who pays (or through the extension of credit
to the Debtor, causes to be paid) any of the Obligations, be subrogated, in whole or in part, to any
rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred
upon the DIP Lender by the terms of this Interim DIP Order or any of the DIP Loan Documents,
until all of the Obligations are indefeasibly paid in full in cash (or by a credit bid in accordance
with Section 363(k) of the Bankruptcy Code) and the Loan Agreement is terminated.

17.     The DIP Liens and the DIP Superpriority Claims shall continue after conversion of
the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code and in any successor
bankruptcy case for the Debtor under any chapter of the Bankruptcy Code, and all liens, security
interests, and claims shall maintain their priority as provided in this Interim DIP Order until all of
the Obligations are indefeasibly paid in full in cash (or a credit bid in accordance with Section
363(k) of the Bankruptcy Code) and the Loan Agreement is terminated.

18.     Notwithstanding anything in this Interim DIP Order, any other DIP Loan
Documents, or any other order by this Court to the contrary, no proceeds of the DIP Loans or
Collateral may be used, directly or indirectly by the Debtor or any other person or entity, to fund
(a) any investigation of or challenge to, the (i) enforceability of any amounts due under the DIP
Loans or the DIP Loan Documents or on account of the DIP Superpriority Claims, or (ii) the
validity, perfection, priority or extent of the DIP Liens, (b) any investigation or prosecution of any
claims, defenses, or causes of action (including, without limitation, any claims or causes of action
under chapter 5 of the Bankruptcy Code) against the DIP Lender or its agents, affiliates,
representatives, attorneys, or advisors, (c) any effort to prevent, hinder or otherwise delay the DIP
Lender's assertion, enforcement, or realization against or upon the Collateral, in accordance with
this Interim DIP Order and the DIP Loan Documents, (d) any effort to seek to modify any of the

111894545_6

135081807v1

rights granted to the DIP Lender hereunder or under the DIP Loan Documents, or (e) any effort to

take any other action prohibited by the Loan Agreement.

19.     The Debtor's authorization to use the DIP Facility shall immediately terminate on

the Line of Credit Termination Date, as defined in the Loan Agreement.

20.     No costs or expenses of administration which have been or may be incurred in the

Chapter 11 Case shall be recovered from the DIP Lender or be charged against the Collateral

pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise. The DIP Lender shall not

be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the

Collateral and shall be entitled to a waiver of the exceptions provided in sections 552(b)(1) and (2)

of the Bankruptcy Code. The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of

the Bankruptcy Code.

21.     Lender shall be entitled to reimbursement by Borrower of Lender's reasonable out-

of-pocket expenses, including reasonable fees of its attorneys and other professionals, pursuant to

and in accordance with the Loan Agreement for reimbursement of such amounts.

22.     In determining to extend credit under the DIP Facility, or in exercising any rights

or remedies pursuant to this Interim DIP Order and the other DIP Loan Documents, the DIP Lender

shall not be deemed to be in control of the Debtor's operations or to be acting as a "responsible

person" or "owner or operator" with respect to the operation or management of the Debtor (as such

terms, or any similar terms, are used in the United States Comprehensive Environmental Response,

Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or

state statute).

23.     The Debtor irrevocably waives any right they may have to seek authority to obtain

post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the

Bankruptcy Code, other than from the DIP Lender, or as may be otherwise expressly permitted under the DIP Loan Documents, unless the Debtor uses the proceeds of such post-petition loans or other financial accommodations to indefeasibly pay in full in cash all Obligations.

24.    In any hearing regarding any exercise of rights or remedies by the DIP Lender following an alleged Event of Default, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing and/or whether any required notice has been provided, and the Debtor hereby waives its right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lender, as set forth in this Interim DIP Order or the other DIP Loan Documents, other than to contest whether an Event of Default has occurred or is continuing and/or whether any required notice has been provided.

25.    In the absence of express prior written consent, no consent to a sale, transfer, lease, encumbrance, or other disposition of any portion of the Collateral shall be implied from any action, inaction, or acquiescence by the DIP Lender.

26.    Upon the occurrence of an Event of Default under the Loan Agreement and following five (5) days written notice thereof (the "Stay Termination Notice") to counsel to the Debtor, counsel to the Committee, if any, and the United States Trustee (collectively, the "Notice Parties"), and unless an Order extending the automatic stay (based upon a finding that an Event of Default has not occurred and is not continuing and/or that any required notice has not been provided) is entered prior to the date which is five (5) days after the date of service of the Stay Termination Notice as set forth below, the automatic stay of section 362 of the Bankruptcy Code shall be deemed automatically vacated and the DIP Lender shall be immediately permitted to, among other things, pursue any and all of its remedies against the Debtor and the Collateral;

13

provided, however, the automatic stay shall be deemed vacated immediately upon entry of this Interim DIP Order to the extent necessary to allow the DIP Lender to enforce its entitlement to payment in full of all Obligations from the proceeds of sale of any Collateral. Following the service of a Stay Termination Notice by the DIP Lender to the Notice Parties, the Notice Parties shall be entitled to an emergency hearing before this Court; provided, however, if the Court does not, prior to the date which is five (5) days after the date of service of the Stay Termination Notice, enter an Order extending the automatic stay (based upon a finding that an Event of Default has not occurred and is not continuing and/or that any required notice has not been provided), the automatic stay shall terminate as provided above notwithstanding the filing or pendency of any request for such emergency hearing.

27.    The provisions of this Interim DIP Order and any actions taken pursuant hereto shall survive the entry of any order: (a) confirming a chapter 11 plan in the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) dismissing the Chapter 11 Case, and the Obligations and DIP Liens shall maintain their enforceability and priority as provided by this Interim DIP Order until all of the Obligations are indefeasibly paid in full in cash in accordance with the DIP Loan Documents.

28.    This Interim DIP Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender may have to bring or be heard on any matter brought before this Court or, in the event of dismissal of the Chapter 11 Case before all Obligations are indefeasibly paid in full, in another court of competent jurisdiction.

29.    The terms, conditions, and provisions of this Interim DIP Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable agreement or law,

14

111894545_6

135081807v1

including, without limitation, rights (a) to seek relief from the automatic stay, (b) to seek an injunction, (c) to oppose any request for use of cash collateral or for the granting of any interest in the Collateral, or of priority in favor of any other party, (d) to object to any sale of assets, or (e) to object to applications for allowance or payment of compensation of the Debtor's professionals or other parties seeking compensation or reimbursement from the Debtor's bankruptcy estate.

30.    Notwithstanding anything to the contrary contained in any prior or subsequent order of this Court, the DIP Lender shall not be required to file proofs of claim in order to maintain its claims with respect to the Obligations, all of which shall be due and payable in accordance with this Interim DIP Order and the DIP Loan Documents without the necessity of filing any such proof of claim.

31.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 7062 or any other Bankruptcy Rule, this Interim DIP Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim DIP Order.

32.    In the event of any inconsistency or conflict between any of the terms and provisions of this Interim DIP Order and the DIP Loan Documents, the terms and provisions of this Interim DIP Order shall govern.

33.    The Debtor's cash management system shall at all times be maintained in accordance with any order of this Court approving the maintenance of the Debtor's cash management system.  The Debtors shall not seek approval of any cash management system by the Court without prior written approval of the same by the DIP Lender.

34.    The DIP Lender shall have the unqualified right to credit bid up to the full amount of the applicable outstanding Obligations, including any accrued interest, in any sale of the Collateral (or any part thereof) without the need for further Court order authorizing the same, and

whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

35.     This Court shall retain jurisdiction to interpret, implement, and enforce the provisions of this Interim DIP Order and the other DIP Loan Documents.

36.     The DIP Lender is hereby granted all protections afforded by section 364(e) of the Bankruptcy Code.

37.     The failure to reference any provision of the DIP Loan Documents in this Interim DIP Order shall not affect the enforceability of such provision.

38.     This Order may not be amended, supplemented or otherwise modified without the express written consent of the DIP Lender.

39.     The Debtor shall promptly serve by United States mail, first class postage prepaid, copies of this Interim DIP Order and a notice of the Final Hearing (the "Final Hearing Notice") to be held on _____, 2024 at _____ to consider entry of the Final DIP Order on the following: (a) the Office of the United States Trustee; (b) the Internal Revenue Service; (c) the Office of the United States Attorney for the District of Minnesota; (e) those entities or individuals listed on the Debtor's list of twenty (20) largest unsecured creditors; (f) all other known parties asserting a lien against or interest in the Debtor's assets; and (g) counsel to any Committee, to the extent appointed. Copies of the Motion, this Interim DIP Order, and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid, promptly following the receipt of such request.

40.     The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final DIP Order shall file written objections with the Court no later than _____, 2024 at _____CT, which objections shall be served so that the same are received on or before

111894545_6

135081807v1

such date and time by: (a) [PPP contact info]; (b) [counsel for PPP contact info]; (c) counsel for

the DIP Lender, McGuireWoods LLP, Tower Two-Sixty, 260 Forbes Avenue, Suite 1800,

Pittsburgh, PA 15222 (Attn: Mark E. Freedlander), mfreedlander@mcguirewoods.com; (d)

counsel for the Committee, if any; and (e) [the Office of the United States Trustee].

111894545_6

135081807v1

# PURE PRAIRIE POULTRY, INC.

**NOTICE OF HEARING AND MOTION FOR INTERIM AND FINAL
ORDERS (I) GRANTING EXPEDITED HEARING, (II) APPROVING
POSTPETITION FINANCING, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV)
AUTHORIZING USE OF CASH COLLATERAL, (V) GRANTING
ADEQUATE PROTECTION, (VI) MODIFYING AUTOMATIC STAY, AND
(VII) GRANTING RELATED RELIEF
<u>[Docket No. 13]</u>**

**The remaining documents related to the Cash Collateral/DIP Motion (the
"Exhibits") have been excluded from service due to the size of the documents.**

**The Exhibits are available for review and can be downloaded free of charge at
the website of the Noticing Agent, Epiq Corporate Restructuring, LLC
("Epiq") at <u>https://dm.epiq11.com/pureprairiepoultry</u>. The Exhibits are
located within Docket No. 13.**

**You may also request a copy of the Exhibits by contacting Epiq directly at
(646) 282-2400 or email at <u>PurePrairiePoultry@epiqglobal.com</u>**

**EXHIBIT B**

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| BKT POULTRY INC | ATTN: OFFICER OR MANAGING AGENT 3366 JEFFERSON AVE BOYDEN IA 51234 |
| CITY OF CHARLES CITY | ATTN: MAYOR OR CITY CLERK 105 MILWAUKEE MALL STE 2 CHARLES CITY IA 50616 |
| COBORN'S INC | ATTN: OFFICER OR MANAGING AGENT 1921 COBORN BLVD PO BOX 1502 SAINT CLOUD MN 56302 |
| CRYSTAL VALLEY FARMS, LLC | D/B/A MILLER POULTRY ATTN: OFFICER OR MANAGING AGENT PO BOX 239 ORLAND IN 46776 |
| DAN AND ELIZABETH BYL INC. | ATTN: OFFICER OR MANAGING AGENT 2671 440TH STREET MAURICE IA 51036 |
| FOODMATE | ATTN: OFFICER OR MANAGING AGENT 221 TURNER BLVD BALL GROUND GA 30107 |
| HUBBARD LLC | ATTN: OFFICER OR MANAGING AGENT 1070 MAIN STREET DEPT CH 10979 PIKEVILLE TN 37367 |
| INTEREUM HOLDINGS LLC | ATTN: OFFICER OR MANAGING AGENT 9800 8TH AVE N PLYMOUTH MN 55441 |
| INTERNAL REVENUE SERVICES | CENTRALIZED INSOLVENCY OPERATIONS P.O. BOX 7346 PHILADELPHIA PA 19101-7346 |
| INTERNAL REVENUE SERVICES | DEPARTMENT OF THE TREASURY 1500 PENNSYLVANIA AVENUE, N.W. WASHINGTON DC 20220 |
| MAREL INC. | ATTN: OFFICER OR MANAGING AGENT 401 SW 7TH STREET DES MOINES IA 50309 |
| MASTERSON STAFFING SOLUTIONS | ATTN: OFFICER OR MANAGING AGENT 3300 FERNBROOK LANE N PLYMOUTH MN 55447 |
| MIDAMERICAN ENERGY | ATTN: OFFICER OR MANAGING AGENT 106 E 2ND ST DAVENPORT IA 52801 |
| MIDAMERICAN ENERGY | ATTN: OFFICER OR MANAGING AGENT PO BOX 8020 DAVENPORT IA 52808-8020 |
| OFFICE OF THE UNITED STATES TRUSTEE | ATTN: ROBERT B. RASCHKE 300 SOUTH FOURTH STREET, SUITE 1015 MINNEAPOLIS MN 55415 |
| ON 10 BROILERS | ATTN: OFFICER OR MANAGING AGENT 2830 450TH STREET MAURICE IA 51036 |
| PERISHABLE DISTRIBUTORS OF IA, INC | ATTN: OFFICER OR MANAGING AGENT 2741 SE PDI PLACE ANKENY IA 50021-3958 |
| QPS EMPLOYMENT GROUP | ATTN: OFFICER OR MANAGING AGENT 250 N PATRICK BLVD, STE 185 BROOKFIELD WI 53045 |
| QPS EMPLOYMENT GROUP | ATTN: OFFICER OR MANAGING AGENT PO BOX 18339 PALATINE IL 60055-8339 |
| ROCK HILL GENETICS, LLC | ATTN: OFFICER OR MANAGING AGENT PO BOX 77 BANCROFT IA 50517 |
| ROCK HILL GENETICS, LLC | ATTN: OFFICER OR MANAGING AGENT 113 N LONG ST BANCROFT IA 50517-2348 |
| SAFE FOODS | ATTN: OFFICER OR MANAGING AGENT 1501 EAST 8TH STREET NORTH LITTLE ROCK AR 72114 |
| SANIMAX | ATTN: OFFICER OR MANAGING AGENT 505 HARDMAN AVENUE SOUTH SOUTH SAINT PAUL MN 55075 |
| SCOTLYNN | ATTN: OFFICER OR MANAGING AGENT 9597 GULF RESEARCH LANE FORT MYERS FL 33912 |
| SUE SHEPARD | 1594 RIVERSIDE AVE N SARTELL MN 56377 |
| TAFT STETTINIUS & HOLLISTER | ATTN JAMES JORRISSEN; ADAM CHANDLER; SCHAAN BARTH 2200 IDS CTR; 80 S 8TH ST MINNEAPOLIS MN 55402 |
| TRI-STATE POULTRY | ATTN: OFFICER OR MANAGING AGENT W648 BAURES ROAD FOUNTAIN CITY WI 54629 |
| UNITED STATES ATTORNEYS OFFICE | ATTN: CIVIL DIVISION U.S. COURTHOUSE 316 N. ROBERT STREET, SUITE 404 ST PAUL MN 55101 |
| UNITED STATES ATTORNEYS OFFICE | ATTN: CIVIL DIVISION U.S. COURTHOUSE 300 S 4TH STREET, SUITE 600 MINNEAPOLIS MN 55415 |

**Total Creditor count  29**

# EXHIBIT C

| Claim Name | Address Information |
|---|---|
| BREMER BANK | ATTN: RYAN THOMPSON 400 2ND ST S ST. CLOUD MN 56301 |

**Total Creditor count  1**

**EXHIBIT D**

| Claim Name | Address Information |
|---|---|
| ALCIVIA | 1401 LANDMARK DRIVE COTTAGE GROVE WI 53527 |
| AMERIGAS | 406 N GULPH RD KING OF PRUSSIA PA 19406-2815 |
| AMERIGAS | PO BOX 371473 PITTSBURGH PA 15250-7473 |
| CALLMULTIPLIER | 201 ROBERT S KERR AVE, OKLAHOMA CITY OK 73102 |
| CENTRA SOTA ENERGY | 805 HWY 55 E BUFFALO MN 55313 |
| CENTRAL MN ELECTRIC, INC | 1805 HAVEN ROAD LITTLE FALLS MN 56345 |
| CITY OF CHARLES CITY | ATTN: MAYOR OR CITY CLERK 105 MILWAUKEE MALL STE 2 CHARLES CITY IA 50616 |
| CROW WING POWER | 17330 MN-371 BRAINERD MN 56401 |
| CROW WING POWER | PO BOX 507 BRAINERD MN 56401 |
| EAST CENTRAL ENERGY | 412 MAIN ST N BRAHAM MN 55006 |
| EAST CENTRAL ENERGY | PO BOX 75530 CHICAGO IL 60675-5530 |
| FARMERS FEED & GRAIN CO. INC | 306 BIRCH ST RICEVILLE IA 50466 |
| FARMERS FEED & GRAIN CO. INC | PO BOX 291 RICEVILLE IA 50466-0291 |
| FEDERATED COOPS | PO BOX 64761 LOCKBOX 446058 ST PAUL MN 55164 |
| FEDERATED COOPS | 502 S 2ND PRINCETON MN 55371-1941 |
| FIVE STAR COOPERATIVE | 1949 N LINN AVE NEW HAMPTON IA 50659 |
| HAWKEYE ALARM AND SIGNAL | ATTN: DOUG LEEPER 16 W. COMMERCIAL ST WATERLOO IA 50701 |
| HEARTLAND NATURAL GAS | ATTN: TYLER ROHACH 8535 EXECUTIVE WOODS DRIVE LINCOLN NE 68512 |
| JENDRO SANITATION SERVICES | 108 PROSPECT LN CHARLES CITY IA 50616 |
| JENDRO SANITATION SERVICES | PO BOX 97 CHARLES CITY IA 50616 |
| LJP WASTE SOLUTION | 2160 RINGHOFER DRICE NORTH MANKATO MN 56003 |
| MALA MILLS LLC | 11720 BROCKTON LANE NORTH MAPLE GROVE MN 55369-9326 |
| MIDAMERICAN ENERGY | 666 GRAND AVE, STE 500 DES MOINES IA 50309 |
| MIDAMERICAN ENERGY | ATTN: OFFICER OR MANAGING AGENT PO BOX 8020 DAVENPORT IA 52808-8020 |
| MINNESOTA POWER | PO BOX 77065 MINNEAPOLIS MN 55480-7765 |
| PEHLER LP GAS LLC | PO BOX 70 DODGE WI 54625 |
| PEHLER LP GAS LLC | 24330 CARDINAL COURT TREMPEALEAU WI 54661 |
| PEHLER OIL LLC | 36064 GOLDEN STREET INDEPENDENCE WI 54747 |
| PEHLER OIL LLC | PO BOX 671 36064 GOLDEN STREET INDEPENDENCE WI 54747 |
| PIERZ COOP | ATTN: DANIEL GRYSKIEWICZ 315 EDWARD ST S PIERZ MN 56364 |
| PIERZ COOP | ATTN: DANIEL GRYSKIEWICZ PO BOX 307 PIERZ MN 56364 |
| POWER PRO ELECTRIC, LLC | N28190 BREKKE RIDGE RD BLAIR WI 54616 |
| RIVERLAND ENERGY | N28988 STATE ROAD 93 ARCADIA WI 54612 |
| RIVERLAND ENERGY | PO BOX 277 ARCADIA WI 54612 |
| ROUTER 12 NETWORKS LLC | 402 19TH STREET SW SUITE B MASON CITY IA 50401 |
| STACYVILLE LP GAS COMPANY | 408 W VERNON ST STACYVILLE IA 50476 |
| STACYVILLE LP GAS COMPANY | PO BOX 128 STACYVILLE IA 50476 |
| WIN LLC | 4955 BULLIS FARM ROAD EAU CLAIRE WI 54701 |
| XCEL ENERGY | 414 NICOLLET MALL MINNEAPOLIS MN 55401 |
| XCEL ENERGY | PO BOX 9477 MINNEAPOLIS MN 55484 |

**Total Creditor count  40**

**EXHIBIT E**

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| ADP | ONE ADP BLVD ROSELAND NJ 07068 |
| HEALTH EQUITY | PO BOX 14374 LEXINGTON KY 40512 |
| MASTERSON STAFFING SOLUTIONS | ATTN: OFFICER OR MANAGING AGENT 3300 FERNBROOK LANE N PLYMOUTH MN 55447 |
| MUTUAL OF OMAHA | PO BOX 2147 PAYMENT PROCESSING CENTER OMAHA NE 68103-2147 |
| MUTUAL OF OMAHA | 3300 MUTUAL OF OMAHA PLAZA OMAHA NE 68175 |
| QPS EMPLOYMENT GROUP | 250 N PATRICK BLVD STE 185 BROOKFIELD WI 53045 |
| QPS EMPLOYMENT GROUP | ATTN: OFFICER OR MANAGING AGENT PO BOX 18339 PALATINE IL 60055-8339 |
| UNITED HEALTHCARE | PO BOX TX950-1000 HARTFORD CT 06103 |

**Total Creditor count  8**

**EXHIBIT F**

| Claim Name | Address Information |
|------------|---------------------|
| ACCELERANT | 100 PARK AVENUE NEW YORK NY 10017 |
| CHUBB GROUP OF INSURANCE COMPANIES | 1133 6TH AVE NEW YORK NY 10036 |
| CINCINNATI INSURANCE COMPANIES | 6200 S GILMORE RD FAIRFIELD OH 45014 |
| CINCINNATI SPECIALTY UNDERWRITERS | 6200 S GILMORE RD FAIRFIELD OH 45014 |
| CRESTBROOK | 1 NATIONWIDE PLAZA COLUMBUS OH 43215 |
| ENDURANCE AMERICAN | 767 THIRD AVENUE, 5TH FLOOR NEW YORK NY 10017 |
| HOUSTON CASUALTY | 13403 NORTHWEST FWY HOUSTON TX 77040 |
| LLOYDS OF LONDON | 280 PARK AVE, EAST TOWER FL 25 NEW YORK NY 10017 |
| NATIONWIDE AGRIBUSINESS | 1100 LOCUST STREET DES MOINES IA 50391 |
| RT SPECIALTY | 1166 AVENUE OF THE AMERICAS, 6TH AVE NEW YORK NY 10036 |
| THE ACCEL GROUP | 5500 FOUNTAINS DR NE STE 201 CEDAR RAPIDS IA 52411 |
| VANTAGE RISK SPECIALTY | 30 WOODBOURNE AVE, 4TH FLOOR PEMBROKE HM08 BERMUDA |

**Total Creditor count  12**

**EXHIBIT G**

| Claim Name | Address Information |
|---|---|
| FLOYD COUNTY TREASURER | 101 S MAIN STREET CHARLES CITY IA 50616-2792 |
| IA SALES/USE TAX PROCESSING | ATTN: MARY MOSIMAN 1305 E. WALNUT DES MOINES IA 50319 |
| IOWA DEPT OF NATURAL RESOURCES | ATTN: CHAIR WALLACE STATE OFFICE BLDG 502 E 9TH ST, 4TH FL DES MOINES IA 50319-0034 |
| IOWA DEPT OF REVENUE | ATTN: MARY MOSIMAN 1305 E WALNUT ST, 4TH FL DES MOINES IA 50319 |
| IOWA DIVISION OF LABOR | ATTN: ROD ROBERTS 150 DES MOINES STREET DES MOINES IA 50309-1836 |
| IOWA INSURANCE DIVISION | ATTN: INSURANCE COMMISSIONER 1963 BELL AVE, STE 100 DES MOINES IA 50315 |
| IOWA OFFICE OF THE ATTORNEY GENERAL | ATTN: BRENNA BIRD-CONSUMER PROT DIV HOOVER ST OFFICE BLDG 1305 E WALNUT ST DES MOINES IA 50319 |
| IOWA STATE TREASURER | ATTN: STATE TREASURER PO BOX 10468 DES MOINES IA 50306-0468 |
| IOWA STATE TREASURER | ATTN: ROBY SMITH HOOVER STATE OFFICE BLDG, 1ST FL 1305 E WALNUT DES MOINES IA 50319 |
| IOWA STATE TREASURER | ATTN: STATE TREASURER STATE TREASURER'S OFFICE CAPITOL BUILDING DES MOINES IA 50319 |
| IOWA WORKFORCE DEVELOPMENT | ATTN: DIRECTOR 1000 EAST GRAND AVENUE DES MOINES IA 50309 |
| IOWA WORKFORCE DEVELOPMENT | ATTN: DIRECTOR UNEMPLOYMENT INSURANCE SERVICES 1000 E GRAND AVE DES MOINES IA 50319-0209 |
| MINNESOTA DEPARTMENT OF COMMERCE | UNCLAIMED PROPERTY DIVISIO ATTN: COMMISSIONER- MAIN OFFICE GOLDEN BLDG 85 7TH PLACE E, STE 280 ST. PAUL MN 55101 |
| MINNESOTA DEPT OF | NATURAL RESOURCES ATTN: COMMISSIONER 500 LAFAYETTE ROAD ST. PAUL MN 55155-4194 |
| MINNESOTA DEPT OF LABOR AND INDUSTRY | ATTN: COMMISSIONER'S OFFICE 443 LAFAYETTE RD N ST PAUL MN 55155 |
| MINNESOTA DEPT OF REVENUE | ATTN: COMMISSIONER 600 N ROBERT ST ST PAUL MN 55101 |
| MINNESOTA DEPT OF REVENUE | ATTN: COMMISSIONER 600 N ROBERT ST. N SAINT PAUL MN 55101 |
| MINNESOTA DEPT OF REVENUE | ATTN: COMMISSIONER MAIL STATION 1765 ST PAUL MN 55145-1765 |
| MINNESOTA DEPT OF REVENUE | ATTN: COMMISSIONER 600 N. ROBERT ST ST PAUL MN 55146 |
| MINNESOTA POLLUTION CONTROL AGENCY | ATTN: COMMISSIONER 500 LAFAYETTE ROAD ST. PAUL MN 55155-4194 |
| MINNESOTA UNEMPLOYMENT INSURANCE | ATTN: DIRECTOR PO BOX 4629 ST PAUL MN 55101-4629 |
| MN. OFFICE OF THE ATTORNEY GENERAL | ATTN: KEITH ELLISON CONSUMER SERVICES DIVISION 445 MINNESOTA ST, STE 1400 ST PAUL MN 55101-2131 |
| OFFICE OF SEC. OF STATE OF IOWA | ATTN: HON. PAUL D. PATE LUCAS BLDG, 1ST FL 321 E 12TH ST DES MOINES IA 50319 |
| OFFICE OF SEC. OF STATE OF MINNESOTA | ATTN: HON. STEVE SIMON 180 STATE OFFICE BLDG 100 REV DR MLK JR BLVD ST. PAUL MN 55155-1299 |
| OFFICE OF SEC. OF STATE OF WISCONSIN | ATTN: HON. DOUGLAS LA FOLLETTE STATE CAPITAL BUILDING ROOM B41W MADISON WI 53703 |
| STATE OF IOWA ATTORNEY GENERAL | ATTN: BRENNA BIRD HOOVER STATE OFFICE BUILDING 1305 E WALNUT ST DES MOINES IA 50319 |
| STATE OF MINNESOTA ATTORNEY GENERAL | ATTN: KEITH ELLISON 445 MINNESOTA ST STE 1400 ST. PAUL MN 55101-2131 |
| STATE OF WISCONSIN ATTORNEY GENERAL | ATTN: JOSH KAUL WISCONSIN DEPARTMENT OF JUSTICE 17 PO BOX 7857 MADISON WI 53703-7857 |
| STATE TREASURER OF IOWA ATTN: ROBY SMITH | UNCLAIMED PROPERTY COMPLIANCE GREATER IOWA TREASURE HUNT LUCAS STATE OFC BLD 321 E 12TH ST 1ST FL DES MOINES IA 50319 |
| US ATTORNEYS OFFICE | SOUTHERN DISTRICT OF IOWA ATTN: RICHARD D. WESTPHAL US COURT ANNEX 110 E COURT AVE, STE 286 DES MOINES IA 50309-2053 |
| US ATTORNEYS OFFICE | ATTN: TIMOTHY T DUAX NORTHERN DISTRICT OF IOWA 111 7TH AVE, SE, BOX 1 CEDAR RAPIDS IA 52401 |
| US ATTORNEYS OFFICE | SOUTHERN DISTRICT OF IOWA ATTN: RICHARD D. WESTPHAL US COURTHOUSE 131 E 4TH ST, STE 310 DAVENPORT IA 52801 |
| US ATTORNEYS OFFICE | EASTERN DISTRICT OF WISCONSIN ATTN: GREGORY J HAANSTAD 517 E WISCONSIN AVE, STE 530 MILWAUKEE WI 53202 |
| US ATTORNEYS OFFICE | WESTERN DISTRICT OF WISCONSIN ATTN: TIMOTHY M. OSHEA 222 W WASHINGTON AVE, STE 700 MADISON WI 53703 |
| US ATTORNEYS OFFICE | EASTERN DISTRICT OF WISCONSIN ATTN: GREGORY J HAANSTAD 205 DOTY ST, STE 301 |

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| US ATTORNEYS OFFICE | GREEN BAY WI 54301 |
| US ATTORNEYS OFFICE | DISTRICT OF MINNESOTA ATTN: ANDREW M LUGER US COURTHOUSE 316 N ROBERT ST, STE 404 ST. PAUL MN 55101 |
| US ATTORNEYS OFFICE | DISTRICT OF MINNESOTA ATTN: ANDREW M LUGER US COURTHOUSE 300 S 4TH ST, STE 600 MINNEAPOLIS MN 55415 |
| US ATTORNEYS OFFICE | ATTN: TIMOTHY T DUAX NORTHERN DISTRICT OF IOWA HO-CHUNKBLDG, STE 670 -600 4TH ST SIOUX CITY IA 51101 |
| US ATTORNEYS OFFICE | SOUTHERN DISTRICT OF IOWA ATTN: RICHARD D. WESTPHAL US COURTHOUSE 2146 27TH AVE, STE 400 COUNCIL BLUFFS IA 51501 |
| WISCONSIN DEPARTMENT OF AGRICULTURE | TRADE AND CONSUMER PROTECTION ATTN: SECRETARY 2811 AGRICULTURE DR; PO BOX 8911 MADISON WI 53708-8911 |
| WISCONSIN DEPT OF NATURAL RESOURCES | ATTN: STEVEN LITTLE, DEPUTY SEC 101 S WEBSTER ST PO BOX 7921 MADISON WI 53707-7921 |
| WISCONSIN DEPT OF REVENUE | ATTN: SECRETARY PO BOX 93389 MILWAUKEE WI 53293-0389 |
| WISCONSIN DEPT OF REVENUE | ATTN: OFFICE OF THE SECRETARY 2135 RIMROCK RD MADISON WI 53713 |
| WISCONSIN DEPT OF REVENUE | ATTN: SECRETARY 2135 RIMROCK RD MADISON WI 53713 |
| WISCONSIN DEPT OF WORKFORCE DEVELOPMENT | ATTN: SECRETARY 201 E WASHINGTON AVE MADISON WI 53703 |
| WISCONSIN DEPT OF WORKFORCE DEVELOPMENT | ATTN: SECRETARY PO BOX 7946 MADISON WI 53707 |
| WISCONSIN DEPT OF WORKFORCE DEVELOPMENT | ATTN: SECRETARY 201 E WASHINGTON AVE PO BOX 7946 MADISON WI 53707 |
| WISCONSIN DIVISION OF SECURITIES | ATTN: ADMINISTRATOR PO BOX 1768 MADISON WI 53701-1768 |
| WISCONSIN DIVISION OF SECURITIES | ATTN: ADMINISTRATOR 4822 MADISON YARDS WAY, NORTH TOWER MADISON WI 53705 |
| WISCONSIN OFFICE OF THE STATE TREASURER | ATTN: STATE TREASURER B38 W STATE CAPITOL MADISON WI 53703 |
| WISCONSIN OFFICE OF THE STATE TREASURER | ATTN: STATE TREASURER PO BOX 8982 MADISON WI 53708-8982 |

Total Creditor count  51

**EXHIBIT H**

| Claim Name | Address Information |
|---|---|
| AGSTATE | 167 WEST 1ST PO BOX 316 NEWELL IA 50568 |
| ALL 14, LLC | 33416 GRAND AVE APLINGTON IA 50604 |
| AQUA AG PARTNERS LLC | 736 220TH ST ALEXANDER IA 50420 |
| BEN WELTZIEN | W23918 HOLCOMB COULEE ROAD GAILESVILLE WI 54630 |
| BKT POULTRY INC | 3366 JEFFERSON AVE BOYDEN IA 51234 |
| CENTRA SOTA COOPERATIVE | PO BOX 780 ALBANY MN 56307 |
| CENTRAL MN ELECTRIC, INC | 1805 HAVEN ROAD LITTLE FALLS MN 56345 |
| CHAD CROWELL | 93339 470TH AVE WINDOM MN 56101 |
| CHRISTOPHER UHLENCAMP | 18848 JEWEL ROAD LITTLE FALLS MN 56345 |
| CITY OF CHARLES CITY | 105 MILWAUKEE MALL STE 2 CHARLES CITY IA 50616 |
| DALE LAHN | W166 HWY 10 MONDOVI WI 54755 |
| DAN AND ELIZABETH BYL INC. | 2671 440TH STREET MAURICE IA 51036 |
| DAN SCHLICHTING | 1435 125TH STREET RICE MN 56367 |
| DAN SCHLICHTING | 1435 125TH STREET NW RICE MN 56367 |
| DAVE KLOSS #1 | 22253 NATURE ROAD ROYALTON MN 56373 |
| DEAN SUCHLA | W21312 NORTH RIVER ROAD WHITEHALL WI 54773 |
| EAST CENTRAL ENERGY | PO BOX 75530 CHICAGO IL 60675-5530 |
| EDUARDO AND ADRIANNA GARCIA | 3819 330TH STREET BOYDEN IA 51234 |
| ERICKSON FARMS | W22144 ERICKSON ROAD STRUM WI 54770 |
| FREDERICK KLOSS | 25300 53RD STREET ROYALTON MN 56373 |
| GOLD-EAGLE COOPERATIVE | 220 NW 8TH STREET EAGLE GROVE IA 50533 |
| GOLDEN ACRES POULTRY LLC | S15465 WILLIAMS ROAD STRUM WI 54770 |
| GREG GIBBONS | N20599 CO RD G DODGE WI 54625 |
| GREG MARTEN | WW284 COUNTY RD HH MONDOVI WI 54755 |
| HEARTLAND NATURAL GAS | 8535 EXECUTIVE WOODS DRIVE SUITE 500 LINCOLN NE 68512 |
| HULL COOPERATIVE | 1206 RAILROAD ST HULL IA 51239 |
| IBEX BROILERS INC | 4204 IBEX AVE ORANGE CITY IA 51041 |
| JASON FARROW | 4903 140TH AVE LEDYARD IA 50556 |
| JENDRO SANITATION SERVICES | PO BOX 97 CHARLES CITY IA 50616 |
| JOE AND CATHY KULIG | N38545 STATE RD 93 121 INDEPENDENCE WI 54747 |
| JOHN BORTLE | N40532 FULLER COULEE RD WHITEHALL WI 54773 |
| JOHN TSCHIDA | 8806 170 AVENUE ROYALTON MN 56373 |
| JOHN WOLLUM | N40279 WEST 36TH ROAD INDEPENDENCE WI 54747 |
| KEMPZ POULTRY SERVICES INC | 29744 290TH STREET WORTHINGTON MN 56187-8404 |
| KLASSEN FARM & POULTRY LLC SITE 1 | 53048 COUNTY ROAD 47 BINGHAM LAKE MN 56118 |
| KUEHL POULTRY LLC | 1550 230TH ST TRUMAN MN 56088 |
| LARRY FALK | 35266 610TH AVE MOUNTAIN LAKE MN 56159 |
| LORIE AND RAY MACIEJ | 11142 60TH STREET ROYALTON MN 56373 |
| MALA MILLS LLC | 11720 BROCKTON LANE NORTH MAPLE GROVE MN 55369-9326 |
| MASTERSON STAFFING SOLUTIONS | 3300 FERNBROOK LANE N # 200 PLYMOUTH MN 55447 |
| MID-IOWA MILLING, LLC | 209 N LINCOLN ST CONRAD IA 50621 |
| MIDAMERICAN ENERGY | P.O. BOX 8020 DAVENPORT IA 52808-8020 |
| MIKE SCHIRMERS | 29790 83RD STREET PIERZ MN 56364 |
| MINNESOTA POWER | PO BOX 77065 MINNEAPOLIS MN 55480-7765 |
| MTECH SYSTEMS USA LLC | 115 PERIMETER CENTER PLACE NE SUITE 845 ATLANTA GA 30346-1729 |
| MYRON AND LOIS KLARENBEEK REVOCABLE | TRUST 1114 10TH AVE ROCK VALLEY IA 51247 |
| NATHAN BELLEFEUILLE | 6864 HILTON ROAD ROYALTON MN 56373 |
| ON 10 BROILERS | ATTN: OFFICER OR MANAGING AGENT 2830 450TH STREET MAURICE IA 51036 |
| PARITY FACTORY LLC | 12918 MUKILTEO SPEEDWAY SUITE C-23 #1180 LYNNWOOD WA 98087 |

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| PEHLER LP GAS LLC | PO BOX 70 DODGE WI 54625 |
| PLEASANT VALLEY POULTRY LLC | 20232 130TH ST PARKERSBURG IA 50665 |
| POPS POULTRY FARM LLC | 33416 GRAND AVE APLINGTON IA 50604 |
| POWER PRO ELECTRIC, LLC | N28190 BREKKE RIDGE RD BLAIR WI 54616 |
| PREMIER COOPERATIVE | 203 SWIGGUM ST WESTBY WI 54667 |
| PSSI PACKERS SANITATION SERVICES INC | PO BOX 7434 CAROL STREAM IL 60197 |
| QPS EMPLOYMENT GROUP | PO BOX 18339 PALATINE IL 60055-8339 |
| RICHLAND INVESTMENTS LLC | 1913 S SHORE DR CLEAR LAKE IA 50428 |
| RIDGELY FARMS LLC | 68808 FORT ROAD FAIRFAX MN 55332 |
| RIDGELY FARMS LLC | GEORGE PEICHEL 68808 FORT RD FAIRFAX MN 55332 |
| RIVERLAND ENERGY | PO BOX 277 ARCADIA WI 54612 |
| ROCK HILL GENETICS, LLC | PO BOX 77 BANCROFT IA 50517 |
| ROXANN WELLE | 1973 305TH AVENUE PIERZ MN 56364 |
| ROXANN WELLE | 19737 305TH AVE PIERZ MN 56364 |
| S&C ORGANIC FARMS SITE 1 | 1047 202ND AVE FORT ATKINSON IA 52144 |
| SAFE FOODS | 1501 EAST 8TH STREET NORTH LITTLE ROCK AR 72114 |
| SANIMAX | ATTN: OFFICER OR MANAGING AGENT 505 HARDMAN AVENUE SOUTH SOUTH SAINT PAUL MN 55075 |
| SUCHLA'S MAPLE HILL FARM | W11023 COUNTY ROAD P BLAIR WI 54616 |
| TERRY AND DAWN FILLA | W474 RICHARDS RD MONDOVI WI 54755 |
| TRI-B FARMS | 710 100TH STREET DOWS IA 50071 |
| TRI-STATE POULTRY | W648 BAURES ROAD FOUNTAIN CITY WI 54629 |
| WIN IT SERVICES LLC | 4955 BULLIS FARM ROAD EAU CLAIRE WI 54701 |
| WIN LLC | 4955 BULLIS FARM ROAD EAU CLAIRE WI 54701 |
| XCEL ENERGY | PO BOX 9477 MINNEAPOLIS MN 55484 |
| ZEE COMPANY | ATTN: OFFICER OR MANAGING AGENT 412 GEORGIA AVENUE, SUITE 300 SUITE 300 CHATTANOOGA TN 37403 |

**Total Creditor count  74**

**EXHIBIT I**

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| ANDERSON PRODUCE COMPANY, INC. | 2296 TERMINAL ROAD ROSEVILLE MN 55113 |
| ASSOCIATED WHOLESALE GROCERS (AWG) | ATTN: SCOTT RUTH 275 74TH STREET SOUTH ST CLOUD MN 56301 |
| EASTERN QUALITY FOODS | ATTN: CHRIS MORGAN 236 PONTE VEDRA PARK DR. #101 PONTE VEDRA BEACH FL 32082 |
| FAREWAY STORES, INC. | ATTN: JOHN TURNER 2300 INDUSTRIAL RD BOONE IA 50036 |
| FOX DELUXE FOODS | ATTN: ASHOR SAMANO 275 E HINTZ RD WHEELING IL 60090 |
| HOLLY POULTRY, LLC | ATTN: HEATH GRAHAM 2221 BERLIN STREET BALTIMORE MD 21230 |
| HOULIHAN TRADING COMPANY, INC. | ATTN: TRAVIS GRIFFIN 161 CLARKSON EXECUTIVE PARK ELLISVILLE MO 63011 |
| ISLAND GRILL FILIPINO CUISINE LLC | ATTN: JEFFREY DIZON 700 1ST AVENUE CHARLES CITY IA 50616 |
| JB GROUP | ATTN: JASON PETERSON 13200 43RD ST NE SAINT MICHAEL MN 55376 |
| JNS FOODS LLC | ATTN: CAREY ROGERS 1401 N UNIVERSITY #602 CORAL SPRINGS FL 33071 |
| JONES POULTRY | ATTN: DUANE VENVERTLOH 8151 S RANGE ROAD UNION MILLS IN 46382 |
| KENRICH FOODS CORP. | ATTN: TOM LONGMIRE P.O. BOX 854 WEST SALEM WI 54669 |
| MARTIN BROTHERS DISTRIBUTING CO. INC | ATTN: STEVEN ARCENEAUX 406 VIKING CEDAR FALLS IA 50613 |
| PORKY PRODUCTS, INC. | ATTN: ZACHARY LUNDIN 30 CORPORATE PARK SUITE 440 IRVINE CA 92606 |
| RED LIONS IMPORT DBA QUAKER VALLEY FOODS | ATTN: SAMANTHA CALOZ 2701 RED LION ROAD PHILADELPHIA PA 19154 |
| SURE GOOD FOODS LTD | ATTN: JAMES RANSON 2333 NORTH SHERIDAN WAY, SUITE 100 MISSISSAUGA ON L5K 1A7 CANADA |
| SWANSON MEATS | ATTN: ANDREW SCHRECK 2737 MINNEHAHA AVE MINNEAPOLIS MN 55406 |
| TRADE CAFE GROUP | ATTN: NICK WITTENBURG 2 BERKELEY ST SUITE 303 TORONTO ON M5A 4J5 CANADA |
| US FOODS | ATTN: CASSIE MUMMAH 3550 2ND STREET CORALVILLE IA 52241 |
| US FOODS | ATTN: ROB JACOBS 280 E GRAND AVE SO ST PAUL MN 55075 |
| US FOODS | 9399 W HIGGINS RD STE 100 ROSEMONT IL 60018 |
| US FOODS | 9399 WEST HIGGINS ROAD ST 500 ROSEMONT IL 60018-6600 |
| US FOODS | ATTN: CHRISTINE WALLACK PO BOX 29283 PHOENIX AZ 85038-9283 |
| US FOODS | ATTN: DAN POERTNER P.O. BOX 29283 PHOENIX AZ 85038-9283 |
| WOLVERINE PACKING CO. | ATTN: BRETT LINDER 2535 RIVARD DETROIT MI 48207 |

**Total Creditor count  25**

**EXHIBIT J**

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| SANDTON CAPITAL SOLUTIONS | MASTER FUND VI, LP ATTN: ROBERT ORR 16 WEST 46TH STREET NEW YORK NY 10036 |
| SANDTON CAPITAL SOLUTIONS | MASTER FUND VI, LP ATTN: ROBERT ORR 101 NORTH COLUMBIA ST, SUITE 200 CHAPEL HILL NC 27514 |

**Total Creditor count  2**

**EXHIBIT K**

Case No. 24-32426 KAC
Email Master Service List

| Name | Email Address |
|------|---------------|
| BKT POULTRY INC | bktpoultry@gmail.com |
| CITY OF CHARLES CITY | trudy@cityofcharlescity.org |
| CRYSTAL VALLEY FARMS, LLC; DBA MILLER POULTRY | info@millerpoultry.com |
| DAN AND ELIZABETH BYL INC. | dmbyl@mtcnet.net |
| FOODMATE | orders@foodmateusa.com |
| HUBBARD LLC | cdyer@hubbardbreedersusa.com |
| INTEREUM HOLDINGS LLC | mcigan@intereum.com |
| INTERNAL REVENUE SERVICES | victoria.g.mosby@irs.gov; millie.h.agent@irs.gov |
| MAREL INC. | us-servicepoultry@marel.com |
| MASTERSON STAFFING SOLUTIONS | bryanh@mastersonstaffing.com; plymouth@mastersonstaffing.com |
| MIDAMERICAN ENERGY | businessadvantage@midamerican.com |
| MIDAMERICAN ENERGY | businessadvantage@midamerican.com |
| OFFICE OF THE UNITED STATES TRUSTEE | michael.fadlovich@usdoj.gov |
| ON 10 BROILERS | darceystout@gmail.com |
| PERISHABLE DISTRIBUTORS OF IA, INC | david.curtis@pdisrd.com |
| QPS EMPLOYMENT GROUP | qpsreceivables@qpsemployment.com |
| ROCK HILL GENETICS, LLC | thayes@rockhillgenetics.com |
| SAFE FOODS | orders@safefoods.net |
| SANIMAX | mike.karman@sanimax.com |
| SCOTLYNN | llucas@scotlynn.com |
| TAFT STETTINIUS & HOLLISTER | jjorissen@taftlaw.com |
| TAFT STETTINIUS & HOLLISTER | achandler@taftlaw.com |
| TAFT STETTINIUS & HOLLISTER | sbarth@taftlaw.com |

**EXHIBIT L**

Iowa Prairie Bankshares, Inc.
Case No. 24-32426 KAC
Email Service List - Banks

| Name | Email Address |
|------|---------------|
| BREMER BANK | rmthompson@bremer.com |

**EXHIBIT M**

Case No. 24-32426 KAC

Email Service List - Utilities

| Name | Email Address |
|------|---------------|
| ALCIVIA | energyinfo@alcivia.com |
| CALLMULTIPLIER | support@callmultiplier.com |
| CENTRA SOTA ENERGY | info@centrasota.com |
| CENTRAL MN ELECTRIC, INC | info@centralminnesotaelectric.com |
| CITY OF CHARLES CITY | trudy@cityofcharlescity.org |
| FEDERATED COOPS | info@federatedcoops.com |
| FIVE STAR COOPERATIVE | bbryan@fivestarcoop.com |
| HAWKEYE ALARM AND SIGNAL | dleeper@hawkeyealarm.com |
| HEARTLAND NATURAL GAS | tyler.rohach@heartlandnaturalgas.com |
| LINDE INC | libby.warren@linde.com |
| MALA MILLS LLC | orders@malamills.com |
| MIDAMERICAN ENERGY | businessadvantage@midamerican.com |
| MINNESOTA POWER | customerservice@mnpower.com |
| MTECH SYSTEMS USA LLC | ercoledf@mtech-systems.com |
| POWER PRO ELECTRIC, LLC | powerprotoday@yahoo.com |
| WIN LLC | support@wintechnology.com |
| XCEL ENERGY | customerservice@xcelenergy.com |

**EXHIBIT N**

Lowa Prairie Bakery, Inc.
Case No. 24-32426 KAC
Email Service List - Wages

| Name | Email Address |
|------|---------------|
| MASTERSON STAFFING SOLUTIONS | bryanh@mastersonstaffing.com; plymouth@mastersonstaffing.com |
| QPS EMPLOYMENT GROUP | qpsreceivables@qpsemployment.com |
| UNITED HEALTHCARE | leeann_mata@uhc.com |

**EXHIBIT O**

Inre Prairie Preamble Inc.
Case No. 24-32426 KAC
Email Service List - Insurance Carriers

| Name | Email Address |
|------|---------------|
| CHUBB GROUP OF INSURANCE COMPANIES | dcariello@cariellolaw.com |
| IPFS CORPORATION | mok.processing@ipfs.com |
| LLOYDS OF LONDON | enquiries@lloyds.com |
| THE ACCEL GROUP | success@theaccelgroup.com |
| VANTAGE RISK SPECIALTY | inquiries@vantagerisk.com. |

**EXHIBIT P**

Case No. 24-32426 KAC

Email Service List - Taxes

| Name | Email Address |
|------|---------------|
| FLOYD COUNTY TREASURER | treasurer@floydcoia.org |
| IA SALES/USE TAX PROCESSING | mary.mosiman@iowa.gov |
| IOWA DEPT OF NATURAL RESOURCES | marcus.branstad@dnr.iowa.gov |
| IOWA DEPT OF REVENUE | mary.mosiman@iowa.gov |
| IOWA OFFICE OF THE ATTORNEY GENERAL | consumer@iowa.gov |
| IOWA STATE TREASURER | idr.bankruptcy@ag.iowa.gov |
| IOWA WORKFORCE DEVELOPMENT | iaworks@iwd.iowa.gov |
| IOWA WORKFORCE DEVELOPMENT | uiclaimshelp@iwd.iowa.gov |
| MINNESOTA DEPARTMENT OF COMMERCE | unclaimed.property@state.mn.us |
| MINNESOTA DEPT OF | info.dnr@state.mn.us |
| MINNESOTA DEPT OF LABOR AND INDUSTRY | dli.laborstandards@state.mn.us |
| MINNESOTA DEPT OF REVENUE | businessincome.tax@state.mn.us |
| MINNESOTA POLLUTION CONTROL AGENCY | donya.dawson@state.mn.us |
| OFFICE OF SEC. OF STATE OF IOWA | sos@sos.iowa.gov |
| OFFICE OF SEC. OF STATE OF MINNESOTA | secretary.state@state.mn.us |
| OFFICE OF SEC. OF STATE OF WISCONSIN | statesec@wi.gov |
| STATE OF IOWA ATTORNEY GENERAL | webteam@ag.iowa.gov |
| STATE OF MINNESOTA ATTORNEY GENERAL | attorney.general@ag.state.mn.us |
| STATE OF WISCONSIN ATTORNEY GENERAL | dojbankruptcynoticegroup@doj.state.wi.us |
| STATE TREASURER OF IOWA | upreport@tos.iowa.gov |
| US ATTORNEYS OFFICE | usawie.webmaster@usdoj.gov |
| WISCONSIN DEPARTMENT OF AGRICULTURE | datcphotline@wi.gov |
| WISCONSIN DEPT OF NATURAL RESOURCES | steven.little@wisconsin.gov |
| WISCONSIN DEPT OF REVENUE | dorincome@wisconsin.gov |
| WISCONSIN DEPT OF WORKFORCE DEVELOPMENT | sec@dwd.wisconsin.gov |
| WISCONSIN DIVISION OF SECURITIES | dfissecurities@dfi.wisconsin.gov |
| WISCONSIN OFFICE OF THE STATE TREASURER | dorunclaimedproperty@wisconsin.gov |

**EXHIBIT Q**

Case No. 24-32426 KAC
Email Service List - Critical Vendor

| Name | Email Address |
|------|---------------|
| AGSTATE | dbennett@agstate.org |
| ALL 14, LLC | tpoppens@iowatelecom.net |
| AQUA AG PARTNERS LLC | nick@pla-groundfamilyfarms.com |
| BELLEFEUILLE, NATHAN | nathanb448@gmail.com |
| BKT POULTRY INC | bktpoultry@gmail.com |
| BORTLE, JOHN | johnbortle@hotmail.com |
| CENTRA SOTA COOPERATIVE | agvancecrm@agvance.net |
| CROWELL, CHAD | clc56101@gmail.com |
| DAN AND ELIZABETH BYL INC. | dmbyl@mtcnet.net |
| EKLER LLC 2 | friesenterprise@rocketmail.com |
| ERICKSON FARMS | debraserickson@hotmail.com |
| FALK, LARRY | ljfalk@frontiernet.net |
| FARROW, JASON | jwfarent@gmail.com |
| FILLA, TERRY AND DAWN | hillarybf21@gmail.com |
| GARCIA, EDUARDO AND ADRIANNA | garcia3farm@outlook.com |
| GIBBONS, GREG | swavvy72@yahoo.com |
| GOLD-EAGLE COOPERATIVE | mharkema@goldeaglecoop.com |
| GOLDEN ACRES POULTRY LLC | goldenacrespoultryllc@gmail.com |
| HEARTLAND NATURAL GAS | tyler.rohach@heartlandnaturalgas.com |
| IBEX BROILERS, INC. | bnkroeze@gmail.com |
| KEMPZ POULTRY SERVICES INC | poultrykempz2017@gmail.com |
| KLASSEN FARM & POULTRY LLC SITE 1 | hkfarm@mvtvwireless.com |
| KLOSS, DAVE 1 | davedkloss@yahoo.com |
| KLOSS, FREDERICK | kloss1971@yahoo.com |
| KUEHL POULTRY LLC | shanekuehl_18@hotmail.com |
| LAHN, DALE | chickenone59@gmail.com |
| MACIEJ, LORIE AND RAY | rmaciej29@gmail.com |
| MALA MILLS LLC | orders@malamills.com |
| MARTEN, GREG | gomarten@frontiernet.net |
| MTECH SYSTEMS USA LLC | ercoledf@mtech-systems.com |
| MYRON AND LOIS KLARENBEEK REVOCABLE TRUST | lhklaren@gmail.com |
| ON 10 BROILERS | darceystout@gmail.com |
| PLEASANT VALLEY POULTRY, LLC | mdwessels1@gmail.com |
| POPS POULTRY FARM LLC | tpoppens@iowatelecom.net |
| POWER PRO ELECTRIC, LLC | powerprotoday@yahoo.com |
| PSSI PACKERS SANITATION SERVICES INC | billing@pssi.com |
| QPS EMPLOYMENT GROUP | qpsreceivables@qpsemployment.com |
| RICHLAND INVESTMENTS LLC | jay@pla-groundfamilyfarms.com |
| RIDGELY FARMS LLC | gdpeichel@gmail.com |
| ROCK HILL GENETICS, LLC | thayes@rockhillgenetics.com |
| S&C ORGANIC FARMS SITE 1 | sbushman@acegroup.cc |
| SAFE FOODS | orders@safefoods.net |
| SANIMAX | mike.karman@sanimax.com |
| SCHIRMERS, MIKE | mikeschirmers23@yahoo.com |
| SUCHLA, DEAN | dbsuchla@gmail.com |

Iowa Prairie Renewables

Case No. 24-32426 KAC

Email Service List - Critical Vendor

| Name | Email Address |
|------|---------------|
| SUCHLA'S MAPLE HILL FARM | stephaniesuchla@gmail.com |
| TRI-B FARMS | makinbacon29@gmail.com |
| TSCHIDA, JOHN | 3btschida@gmail.com |
| UHLENCAMP, CHRISTOPHER | clkampfarm@gmail.com |
| WELLE, ROXANN | dwrrwelle@gmail.com |
| WELTZIEN, BEN | rwpoultryfarm@gmail.com |
| WELTZIEN-SONALLA, RAY | rwpoultryfarm@gmail.com |
| WOLLUM, JOHN | gardo_kool@hotmail.com |
| XCEL ENERGY | customerservice@xcelenergy.com |
| ZEE COMPANY | max.kinney@vincitgroup.com |

**EXHIBIT R**

Case No. 24-32426 KAC

Email Service List - Customer Programs

| Name | Email Address |
| --- | --- |
| JONES POULTRY | duanev@jonespoultry.com |
| SURE GOOD FOODS LTD | jranson@suregoodfoods.com |
| SWANSON MEATS | andrew@swansonmeats.com |
| TRADE CAFE GROUP | credit@tradecafe.com |
| US FOODS | cassandra.mummah@usfoods.com |
| WOLVERINE PACKING CO. | blinders@wolverinepacking.com |

**EXHIBIT S**

Iowa Prairie Renewable
Case No. 24-32426 KAC
Email Service List - DIP Parties

| Name | Email Address |
|------|---------------|
| SANDTON CAPITAL SOLUTIONS | rorr@sandtoncapital.com |

# EXHIBIT T

Uwe Prairie Acquisition, LLC
Case No. 24-32426 KAC
Fax Master Service List

| Name | Fax |
|------|-----|
| MASTERSON STAFFING SOLUTIONS | 763-233-5050 |
| OFFICE OF THE UNITED STATES TRUSTEE | 612-335-4032 |
| QPS EMPLOYMENT GROUP | 262-314-8444 |
| SAFE FOODS | 501-663-8952 |
| UNITED STATES ATTORNEYS OFFICE | 612-664-5787 |

**EXHIBIT U**

Iowa Prairie Renewables
Case No. 24-32426 KAC
Fax Service List - Utilities

| Name | Fax |
|------|-----|
| CROW WING POWER | 218-825-2209 |
| FARMERS FEED & GRAIN CO. INC | 641-985-4000 |
| JENDRO SANITATION SERVICES | 641-257-6416 |
| MINNESOTA POWER | 218-355-2770 |
| STACYVILLE LP GAS COMPANY | 641-710-2026 |

**EXHIBIT V**

Lowell Prairie Stone, Inc.
Case No. 24-32426 KAC
Fax Service List - Wages

| Name | Fax |
|------|-----|
| MASTERSON STAFFING SOLUTIONS | 763-233-5050 |
| MUTUAL OF OMAHA | 952-833-5410 |

**EXHIBIT W**

Iowa Prairie Partners, LLC
Case No. 24-32426 KAC
Fax Service List - Insurance Carriers

| Name | Fax |
|------|-----|
| CHUBB GROUP OF INSURANCE COMPANIES | 800-664-1765 |
| CINCINNATI INSURANCE COMPANIES | 513-870-2969 |
| CINCINNATI SPECIALTY UNDERWRITERS | 513-870-2969 |
| HOUSTON CASUALTY | 713-462-4210 |
| NATIONWIDE AGRIBUSINESS | 800-842-1482 |
| THE ACCEL GROUP | 319-365-6919 |
| VANTAGE RISK SPECIALTY | 715-539-4651 |

**EXHIBIT X**

InnerPrairie, LLC
Case No. 24-32426 KAC
Fax Service List - Taxes

| Name | Fax |
|---|---|
| IOWA DEPT OF NATURAL RESOURCES | 515-725-8201 |
| IOWA DEPT OF REVENUE | 515-242-6487 |
| IOWA DIVISION OF LABOR | 515-281-7995 |
| IOWA INSURANCE DIVISION | 515-654-6500 |
| IOWA OFFICE OF THE ATTORNEY GENERAL | 515-281-6771 |
| IOWA STATE TREASURER | 515-242-6487 |
| MINNESOTA UNEMPLOYMENT INSURANCE | 651-297-5283 |
| OFFICE OF SEC. OF STATE OF IOWA | 515-281-4682 |
| OFFICE OF SEC. OF STATE OF MINNESOTA | 651-296-9073 |
| STATE OF IOWA ATTORNEY GENERAL | 515-281-4209 |
| STATE OF WISCONSIN ATTORNEY GENERAL | 608-294-2907 |
| US ATTORNEYS OFFICE NORTHERN DISTRICT OF IOWA | 712-252-2034 |
| US ATTORNEYS OFFICE NORTHERN DISTRICT OF IOWA | 319-363-1990 |
| US ATTORNEYS OFFICE DISTRICT OF MINNESOTA | 612-664-5787 |
| US ATTORNEYS OFFICE EASTERN DISTRICT OF WISCONSIN | 414-297-1738 |
| US ATTORNEYS OFFICE EASTERN DISTRICT OF WISCONSIN | 920-884-2997 |
| US ATTORNEYS OFFICE SOUTHERN DISTRICT OF IOWA | 515-473-9288 |
| US ATTORNEYS OFFICE SOUTHERN DISTRICT OF IOWA | 712-256-5112 |
| US ATTORNEYS OFFICE SOUTHERN DISTRICT OF IOWA | 563-449-5433 |
| US ATTORNEYS OFFICE WESTERN DISTRICT OF WISCONSIN | 608-264-5925 |
| WISCONSIN DEPT OF NATURAL RESOURCES | 608-261-4380 |
| WISCONSIN DEPT OF REVENUE | 608-267-0834 |
| WISCONSIN DEPT OF REVENUE | 608-267-1030 |
| WISCONSIN DEPT OF WORKFORCE DEVELOPMENT | 608-260-3053 |

**EXHIBIT Y**

PURE PRAIRIE POULTRY INC
SERVICE LIST

| Claim Name | Address Information |
|---|---|
| BKT POULTRY INC | ATTN: OFFICER OR MANAGING AGENT 3366 JEFFERSON AVE BOYDEN IA 51234 |
| CITY OF CHARLES CITY | ATTN: MAYOR OR CITY CLERK 105 MILWAUKEE MALL STE 2 CHARLES CITY IA 50616 |
| COBORN'S INC | ATTN: OFFICER OR MANAGING AGENT 1921 COBORN BLVD PO BOX 1502 SAINT CLOUD MN 56302 |
| CRYSTAL VALLEY FARMS, LLC | D/B/A MILLER POULTRY ATTN: OFFICER OR MANAGING AGENT PO BOX 239 ORLAND IN 46776 |
| DAN AND ELIZABETH BYL INC. | ATTN: OFFICER OR MANAGING AGENT 2671 440TH STREET MAURICE IA 51036 |
| FOODMATE | ATTN: OFFICER OR MANAGING AGENT 221 TURNER BLVD BALL GROUND GA 30107 |
| GISLASON & HUNTER LLP | (COUNSEL TO SOUTHSTAR CAPITAL LLC) ATTN MICHAEL S DOVE; C BOWLER 2700 SOUTH BROADWAY PO BOX 458 NEW ULM MN 56073-0458 |
| HUBBARD LLC | ATTN: OFFICER OR MANAGING AGENT 1070 MAIN STREET DEPT CH 10979 PIKEVILLE TN 37367 |
| INTEREUM HOLDINGS LLC | ATTN: OFFICER OR MANAGING AGENT 9800 8TH AVE N PLYMOUTH MN 55441 |
| INTERNAL REVENUE SERVICES | CENTRALIZED INSOLVENCY OPERATIONS P.O. BOX 7346 PHILADELPHIA PA 19101-7346 |
| INTERNAL REVENUE SERVICES | DEPARTMENT OF THE TREASURY 1500 PENNSYLVANIA AVENUE, N.W. WASHINGTON DC 20220 |
| MAREL INC. | ATTN: OFFICER OR MANAGING AGENT 401 SW 7TH STREET DES MOINES IA 50309 |
| MASTERSON STAFFING SOLUTIONS | ATTN: OFFICER OR MANAGING AGENT 3300 FERNBROOK LANE N PLYMOUTH MN 55447 |
| MIDAMERICAN ENERGY | ATTN: OFFICER OR MANAGING AGENT 106 E 2ND ST DAVENPORT IA 52801 |
| MIDAMERICAN ENERGY | ATTN: OFFICER OR MANAGING AGENT PO BOX 8020 DAVENPORT IA 52808-8020 |
| OFFICE OF THE UNITED STATES TRUSTEE | ATTN: MICHAEL FADLOVICH 300 SOUTH FOURTH ST, STE 1015 MINNEAPOLIS MN 55415 |
| ON 10 BROILERS | ATTN: OFFICER OR MANAGING AGENT 2830 450TH STREET MAURICE IA 51036 |
| PERISHABLE DISTRIBUTORS OF IA, INC | ATTN: OFFICER OR MANAGING AGENT 2741 SE PDI PLACE ANKENY IA 50021-3958 |
| QPS EMPLOYMENT GROUP | ATTN: OFFICER OR MANAGING AGENT 250 N PATRICK BLVD, STE 185 BROOKFIELD WI 53045 |
| QPS EMPLOYMENT GROUP | ATTN: OFFICER OR MANAGING AGENT PO BOX 18339 PALATINE IL 60055-8339 |
| QUARLES & BRADY LLP | (COUNSEL TO QPS EMPLOYMENT GRP) ATTN: ERIC VAN SCHYNDLE 411 E WISCONSIN AVE, STE 2400 MILWAUKEE WI 53202-4428 |
| ROCK HILL GENETICS, LLC | ATTN: OFFICER OR MANAGING AGENT PO BOX 77 BANCROFT IA 50517 |
| ROCK HILL GENETICS, LLC | ATTN: OFFICER OR MANAGING AGENT 113 N LONG ST BANCROFT IA 50517-2348 |
| SAFE FOODS | ATTN: OFFICER OR MANAGING AGENT 1501 EAST 8TH STREET NORTH LITTLE ROCK AR 72114 |
| SANIMAX | ATTN: OFFICER OR MANAGING AGENT 505 HARDMAN AVENUE SOUTH SOUTH SAINT PAUL MN 55075 |
| SCOTLYNN | ATTN: OFFICER OR MANAGING AGENT 9597 GULF RESEARCH LANE FORT MYERS FL 33912 |
| SUE SHEPARD | 1594 RIVERSIDE AVE N SARTELL MN 56377 |
| TAFT STETTINIUS & HOLLISTER | ATTN JAMES JORRISSEN; ADAM CHANDLER; SCHAAN BARTH 2200 IDS CTR; 80 S 8TH ST MINNEAPOLIS MN 55402 |
| TRI-STATE POULTRY | ATTN: OFFICER OR MANAGING AGENT W648 BAURES ROAD FOUNTAIN CITY WI 54629 |
| UNITED STATES ATTORNEYS OFFICE | ATTN: CIVIL DIVISION U.S. COURTHOUSE 316 N. ROBERT STREET, SUITE 404 ST PAUL MN 55101 |
| UNITED STATES ATTORNEYS OFFICE | ATTN: CIVIL DIVISION U.S. COURTHOUSE 300 S 4TH STREET, SUITE 600 MINNEAPOLIS MN 55415 |

**Total Creditor count  31**

**EXHIBIT Z**

Prairie Poultry LLC
Case No. 24-32426 KAC
Email Master Service List

| Name | Email Address |
|------|---------------|
| BKT POULTRY INC | bktpoultry@gmail.com |
| CITY OF CHARLES CITY | trudy@cityofcharlescity.org |
| CRYSTAL VALLEY FARMS, LLC; DBA MILLER POULTRY | info@millerpoultry.com |
| DAN AND ELIZABETH BYL INC. | dmbyl@mtcnet.com |
| FOODMATE | orders@foodmateusa.com |
| GISLASON & HUNTER LLP | cbowler@gislason.com |
| GISLASON & HUNTER LLP | mdove@gislason.com |
| HUBBARD LLC | cdyer@hubbardbreedersusa.com |
| INTEREUM HOLDINGS LLC | mcigan@intereum.com |
| INTERNAL REVENUE SERVICES | victoria.g.mosby@irs.gov; millie.h.agent@irs.gov |
| MAREL INC. | us-servicepoultry@marel.com |
| MASTERSON STAFFING SOLUTIONS | bryanh@mastersonstaffing.com; plymouth@mastersonstaffing.com |
| MIDAMERICAN ENERGY | businessadvantage@midamerican.com |
| MIDAMERICAN ENERGY | businessadvantage@midamerican.com |
| OFFICE OF THE UNITED STATES TRUSTEE | michael.fadlovich@usdoj.gov |
| ON 10 BROILERS | darceystout@gmail.com |
| PERISHABLE DISTRIBUTORS OF IA, INC | david.curtis@pdisrd.com |
| QPS EMPLOYMENT GROUP | qpsreceivables@qpsemployment.com |
| QUARLES & BRADY LLP | eric.vanschyndle@quarles.com |
| ROCK HILL GENETICS, LLC | thayes@rockhillgenetics.com |
| SAFE FOODS | orders@safefoods.net |
| SANIMAX | mike.karman@sanimax.com |
| SCOTLYNN | llucas@scotlynn.com |
| TAFT STETTINIUS & HOLLISTER | jjorissen@taftlaw.com |
| TAFT STETTINIUS & HOLLISTER | achandler@taftlaw.com |
| TAFT STETTINIUS & HOLLISTER | sbarth@taftlaw.com |